**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2007-CT-02016-SCT**

*VINCENT CARNELL HUDSON a/k/a SLIM*

*v.*

*STATE OF MISSISSIPPI*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/2007 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: PHILLIP W. BROADHEAD |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA LYNN BLOUNT |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 03/25/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. This certiorari review arises from Vincent Hudson's conviction of possession of a "trace" amount of cocaine found in his clothes. Because the evidence introduced at trial was insufficient to show that he knew the cocaine was present and that he consciously and intentionally had possessed it, we reverse and render Hudson's conviction and the Winston

County Circuit Court's imposition upon him of a life sentence without the possibility of parole.

**FACTS**

¶2.     On February 6, 2007, Vincent Carnell Hudson ("Vincent") was riding in the passenger seat of a car driven by his brother, Hillute Hudson ("Hillute").[1]  As the vehicle was traveling on Barrymore Street in Louisville, Mississippi, Officer Patrick Estes of the Louisville Police Department pulled it over for speeding.  Just after the stop, Officer Estes noticed what he called "extreme [and] unnecessary movement" by Vincent.  When he approached the vehicle, Officer Estes learned Hillute's identity when he asked for his driver's license.  Prior to the traffic stop and as Officer Estes was conversing with Hillute, Vincent was drinking beer and eating chicken.  Officer Estes returned to his patrol car and ran a background check on Hillute, by which he learned that Hillute had a suspended license.  Hillute also had an outstanding warrant issued by the Philadelphia, Mississippi, Police Department for contempt of court.  While he was writing the citations, Officer Estes saw Vincent looking backward toward the patrol car and reaching toward the back seat of the car.  As a precaution, Officer Estes called Lieutenant Andy Taylor to the scene and approached the vehicle again.

¶3.     Officer Estes arrested Hillute for driving with a suspended license and pursuant to the outstanding warrant.  Officer Estes patted down Hillute and found marijuana in a cigarette package on his person.  Hillute was handcuffed and secured in the back of the patrol car.  Then, Officer Estes returned to the vehicle, where he arrested Vincent for having the open

_____

[1] It was later determined that the car was registered to Osler M. Houston of Rock Island, Illinois.

container of beer in violation of a local ordinance. Vincent was patted down, checked, handcuffed, and placed in the back of the patrol car as well. Both Officer Estes and Lieutenant Taylor searched Vincent, but neither officer found any controlled substances on Vincent's person or in his clothes during these pat-down searches. Officer Estes and Lieutenant Taylor then searched the vehicle and found some marijuana in the ashtray.[2] They also found a bag on the back seat of the car near the area Officer Estes had seen Vincent reaching. The bag contained cocaine, methylenedioxymethamphetamine ("ecstacy"), and marijuana. Officer Estes then called Agent Barry McWhirter of the Mississippi Bureau of Narcotics to the scene to handle the drugs.

¶4.     The Hudson brothers were transported to the Winston County jail for questioning. Vincent stated during questioning that he did not know anything about the drugs in the car. Agent McWhirter testified that, during questioning, Vincent appeared to have been impaired. When Agent McWhirter asked Vincent about his impairment, Vincent stated that he had been working around paint thinner earlier that day while painting a vehicle. At some point thereafter, the clothes Vincent had been wearing at the time of his arrest were seized by jail officials.[3] Agent McWhirter was not present at the time Vincent's clothes were seized.

¶5.     The day after the arrest, Agent McWhirter collected Vincent's clothes from the jail. The following day, Agent McWhirter personally transported the clothes, along with the bag of drugs found on the back seat of the car, to the Mississippi Crime Laboratory. Agent

---

[2] Hillute later admitted to possession of the marijuana found on his person and the marijuana found in the ashtray.

[3] The record does not indicate, and the State put forth no evidence at trial, that jail officials found any controlled substances on Vincent's person or in his clothes at the jail.

3

McWhirter testified that he had seized Vincent's clothes and had asked the crime lab to "check the pockets of the pants and shirt . . . [i]n case there had been anything in the pocket of evidentiary value that they could find that would be related to our case." The Mississippi Crime Laboratory tested Vincent's clothing and later reported that "trace" amounts of cocaine were found in them. Vincent was charged with one count of felony possession of the cocaine in his clothes and one count, each, of felony possession of the cocaine, ecstacy, and marijuana found in the bag on the back seat of the car.

¶6. At trial on November 1, 2007, in addition to testimony from Officer Estes and Agent McWhirter, the state crime lab forensic examiner, Brandy Goodman, testified that she had tested Vincent's clothing and had found a "trace" amount of cocaine in one shirt pocket and one pants pocket. She described a "trace" amount as "an amount that I can physically see that there is something there, but it is not a weighable amount of substance." Goodman stated that, by an amount which she can "physically see," she means "just a very, very minute amount of substance [such as] possibly flakes or crumbs." Two vials were produced and entered into evidence containing what was left of the substance found in Vincent's clothes. Goodman stated that some of the substance had been destroyed through the chemical testing, but that the vials contained "most of what [she] found" in Vincent's clothes. Nonetheless, Goodman admitted on cross-examination that the substance in the vials was "a lot less" than one-tenth of a gram. When Vincent's defense counsel examined the vials and published them to the jury, he stated, "I am having a terrible time seeing anything in there," to which Goodman replied, "[t]hat is because it was a trace amount." At the conclusion of the State's

4

case-in-chief, Vincent's defense counsel moved for a directed verdict, which was denied. Vincent did not testify.

¶7.    The jury found Vincent Hudson not guilty of all three counts of possession of the drugs in the bag on the back seat of the car, but returned a guilty verdict with respect to the felony charge of possession of the "trace" amount of cocaine found in his clothes. Because he was found to be a habitual offender pursuant to Mississippi Code Section 99-19-83 (Rev. 2007),[4] the Winston County Circuit Court sentenced Vincent to life imprisonment in the custody of the Mississippi Department of Corrections ("MDOC") without eligibility for parole. Vincent filed an unsuccessful post-trial motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial.

¶8.    Aggrieved by his conviction and sentence, Vincent appealed, arguing that the evidence was insufficient to convict him, and that his sentence is grossly disproportionate to the crime of which he was convicted and amounts to cruel and unusual punishment. The Court of Appeals affirmed Vincent's conviction and sentence by a vote of nine to zero (9-0). *Hudson v. State*, 2009 WL 311167 (Miss. Ct. App. Feb. 10, 2009). Vincent petitioned for certiorari, which this Court granted on November 5, 2009. We find the first issue regarding the sufficiency of the evidence dispositive.

**STANDARD OF REVIEW**

---

[4] Vincent was convicted in 1978 and served nearly three years, from 1978 to 1981, on a five-year sentence for felony shoplifting, a two-year sentence for possession of heroin, and a one-year sentence for aggravated assault on a law enforcement officer. Vincent also was convicted in 1982 for armed robbery and served more than fifteen years of a thirty-year sentence, from 1982 to 1997. Finally, Vincent was convicted in 2005 for felony driving under the influence (DUI) and served just over a year on a five-year sentence.

5

¶9. In considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for JNOV, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005) (citing **Carr v. State**, 208 So. 2d 886, 889 (Miss. 1968)). Hence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Dilworth v. State**, 909 So. 2d 731, 736 (Miss. 2005) (citing **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). We explained in **Dilworth** that:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render, *i.e.* reverse and discharge. However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.

**Dilworth**, 909 So. 2d at 736 (internal citations omitted).

## DISCUSSION

### Whether the evidence was sufficient to convict Vincent.

¶10. Vincent was charged and convicted under Mississippi Code Section 41-29-139(c)(1)(A), which makes it a crime to possess less than one-tenth (0.10) gram of a

controlled substance. Miss. Code Ann. § 41-29-139(c)(1)(A) (Rev. 2009).[5] Possession of a controlled substance may be actual or constructive. *Berry v. State*, 652 So. 2d 745 (Miss. 1995) (citing *Wolf v. State*, 260 So. 2d 425, 432 (Miss. 1972)). This Court has explained that:

> [w]hat constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession:" is a question which is not susceptible to a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

*Dixon v. State*, 953 So. 2d 1108, 1112 (Miss. 2007) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971).

¶11.   In other words, "[t]he law states that actual possession is not needed, that constructive possession will do." *Smith v. State*, 839 So. 2d 489, 497 (Miss. 2003). Nevertheless, the "awareness" and "conscious intent to possess" elements apply to both actual and constructive possession. The only difference is that, with actual possession, the drug is actually found on the defendant's person (*i.e.*, in his hands, mouth, pockets, etc.), whereas, with constructive possession, the drug is simply found "near" the defendant's person in a place over which the defendant exercises dominion or control. Thus, "[t]he State ha[s] to prove that [the

---

[5] Section 41-29-139(c)(1)(A) gives the prosecutor discretion to charge the crime either as a felony, which carries a maximum prison term of four years, or as a misdemeanor, which carries a maximum prison term of one year. *Id.* As the constitutionality of Section 41-29-139(c)(1)(A) has not been specifically pleaded, we do not address it here. *Trainer v. State*, 930 So. 2d 373, 377 (Miss. 2006); *Martin v. Lowery*, 912 So. 2d 461, 466 (Miss. 2005).

7

defendant] was aware of the cocaine and intentionally, *but not necessarily physically*, possessed it." ***Id.*** (citing ***Curry***, 249 So. 2d at 416) (emphasis added). "[T]o test whether the prosecution met this standard of proof in individual cases[,] each case must be viewed in light of its individual facts and circumstances[.]" ***Cunningham v. State***, 583 So. 2d 960, 962 (Miss. 1991) (citing ***Curry***, 249 So. 2d at 416).

¶12.    Here, it is undisputed that the "trace" amount of cocaine which Vincent was convicted of possessing was in the pockets of the clothes he was wearing when he was arrested. Hence, at the time of his arrest, Vincent actually physically possessed the cocaine. The State found it necessary to apply the "constructive possession" rationale regarding the drugs in the bag found on the back seat of the car, but Vincent was acquitted of those charges. Thus, this appeal does not involve an issue of constructive possession. But even if it did, as the dissent argues, the State still was required to prove that Vincent "was aware of the cocaine and intentionally . . . possessed it." ***Smith***, 839 So. 2d at 497.

¶13.    The State argues that it "established the clothes belonged to Hudson, the clothes contained cocaine[,] and a juror could reasonably infer Hudson knew the clothes contained [cocaine]." In other words, the State asserts that "[o]ne could reasonably infer that because the cocaine was in the shirt and pants pockets Hudson was wearing at the time of arrest that he had knowledge that he possessed the drug." Vincent argues that possession of a "trace" amount of cocaine is insufficient to support a conviction of actual possession. Specifically, Vincent argues that the State did not prove that he knew the minuscule, unweighable amount of cocaine was present in his pockets, and if he did not know it was there, then obviously,

8

he could not have consciously and intentionally possessed it. *See **Dixon***, 953 So. 2d at 1112-13.[6]

¶14.   With regard to possession of a controlled substance, this Court previously has held that "the statute requires no minimum amount[, but] any identifiable amount, however slight, constitute[s] a crime." ***Hampton v. State***, 498 So. 2d 384, 386 (Miss. 1986) (noting that majority of jurisdictions under the Uniform Controlled Substances Act hold any amount sufficient). Thus, possession of a mere "trace" amount of illegal drugs is sufficient to support a conviction. ***Id.***

¶15.   In ***Hampton***, the prosecution met its burden of proving the defendant's knowing possession of a controlled substance. The police officer who pulled over Hampton witnessed him staggering and acting disoriented. The officer patted Hampton down, as he testified at trial, "for his protection," and in doing so, felt a syringe in Hampton's coat. The officer seized the syringe, and "[h]e noticed some clear liquid in [it]," which later was identified as pentazocine (commonly known as Talwin), a Schedule II controlled substance. The officer asked Hampton if he would take a breath test, and without asking Hampton any other questions, Hampton "smiled and made a statement that there was nothing in the syringe that [the State] could use against him because he had already used it all." ***Hampton***, 498 So. 2d at 385.

___

[6] Vincent also argued before the Court of Appeals that the prosecution had failed to prove that the clothes in which the cocaine was found were his own clothes. However, Vincent does not assert this issue before this Court, so we do not address it.

¶16. Hampton was convicted of possession of the "trace" amount of Talwin in the syringe and argued on appeal that "there was an insufficient amount of Talwin found in his possession to constitute a crime." *Id.* This Court rejected that argument, noting that "we are not confined to the Talwin that was found in the syringe, because that coupled with Hampton's boast when he was arrested that he had 'used it all,' evidence[s] possession of a greater amount." *Id.* at 386. Thus, Hampton's conviction and this Court's affirmance of it were based not only on the "trace" amount of Talwin found in the syringe, but also on additional facts evincing his awareness ("knowledge") of its presence there and his intent to possess it. Hampton appeared impaired, the police officer who stopped Hampton actually noticed the small amount of liquid in the syringe, and Hampton admitted to having used the rest of it. *Id.* at 385-86.

¶17. Another factually similar case, decided by the Court of Appeals, is *Nance v. State*, 948 So. 2d 459 (Miss. Ct. App. 2007). In that case, Nance was pulled over while driving for failure to dim his headlights to an oncoming car driven by a sheriff's deputy. During the course of the traffic stop, Nance was evasive with his identification. Eventually, though, Nance provided the deputy with his correct name, and the officer discovered that Nance had an outstanding warrant for his arrest. Nance was arrested on the warrant and transported to jail. As Nance was being booked into jail, a detention officer discovered in Nance's clothing a corner of a sandwich bag, which was tied up and contained a white powdery substance. Nance stated that the bag was a candy wrapper and directed the officer to throw it away in the trash. However, the officer collected the bag as evidence and sent it to the crime lab for testing, where it was determined that the bag contained cocaine. *Id.* at 460.

10

¶18.    Nance was convicted of possession of the cocaine, and he argued on appeal that "there was insufficient evidence presented to the jury to prove that he knowingly possessed cocaine." *Id.* The Court of Appeals rejected that argument, explaining that:

> [T]he facts deduced at trial showed that Nance was in actual physical possession of the cocaine. The substance was found on his person during a routine booking at the jail house. While there is no requirement that the defendant be in actual physical possession to be found guilty, in this case, the proof clearly established that Nance physically possessed the bag containing cocaine. When Nance was questioned about the bag, he told the officer that the bag was a candy wrapper and asked the officer to dispose of the bag in the garbage. At no time did Nance disclaim the bag, as to suggest that it did not belong to him. In fact, he identified the bag, falsely, as a candy wrapper. Nance's statements to the officer establish by deduction that he was the owner and in possession of the bag. He claimed ownership over the bag by giving permission to the officer to dispose of the bag containing cocaine. These acts and statements made by Nance, taken together, have sufficient weight so that a reasonable jury could find that Nance was in knowing possession of the cocaine.

*Nance*, 948 So. 2d at 461. Therefore, as in *Hampton*, Nance's conviction and the appellate court's affirmance of it were based not only on the fact that the cocaine actually was physically present on his person, but also on additional facts evincing Nance's ownership of the cocaine, his knowledge of its presence in his pocket, and his intent to possess it. *Id.* The booking officer actually found the bag, Nance did not disclaim possession of it, and Nance claimed ownership of the small amount of cocaine by instructing the officer to dispose of the bag. *Id.*

¶19.    Pursuant to *Hampton*, "any identifiable amount, however slight, constitute[s] a crime." *Hampton*, 498 So. 2d at 386. Regardless of the amount, however, the prosecution in this case was required to prove beyond a reasonable doubt that Vincent was aware of the presence and character of the cocaine in his pockets and that he intentionally and consciously

11

possessed it. *Dixon*, 953 So. 2d at 1112-13; *Smith*, 839 So. 2d at 497. In other words, the prosecution had to prove both "knowledge" and "intent," *i.e.*, that Vincent knew it was in his pockets, knew it was cocaine, and intended to possess it. *Id.* This burden of proof is more difficult to meet when "trace" amounts are involved, because such minuscule amounts can go unnoticed. But it is not impossible to prove. In both *Hampton* and *Nance*, the officers themselves noticed the drug. In *Hampton*, the defendant admitted to knowing the drug was present, and in *Nance*, the defendant claimed ownership over the drug by instructing the officer to dispose of it. Therefore, in convicting Hampton and Nance of possession of a "trace" amount of drugs, in addition to proving that the substance was, in fact, found on the defendant's person, the prosecution introduced additional evidence sufficient to establish that the defendant had been aware of its presence there and had intended to possess it.

¶20. The State did not meet this burden in this case. Although the prosecution did establish that the cocaine was, in fact, physically present in Vincent's clothes, that is not enough. The State still had to prove that Vincent knew it was there. Because the "trace" amount of cocaine ultimately was found in the clothes Vincent was wearing at the time of his arrest, the State asserts that the jury could have inferred that he knew it was there and intentionally had possessed it. But the evidence adduced at trial does not support such an inference.

¶21. The only evidence presented at trial in this regard was the testimony of Brandy Goodman, the forensic examiner who discovered the "trace" amount of cocaine in two of Vincent's pockets. Goodman testified that a "trace" amount is an amount that "[she] can physically see that there is something there [such as] possibly flakes or crumbs." However, Goodman also testified that a "trace" amount is "a very, very minute amount" and "not a

12

weighable amount of substance." And although the vials introduced into evidence still contained "most of what [she] found" in Vincent's clothes, Goodman stated that it was "a lot less" than one-tenth of a gram. Goodman conceded that, "because it was a trace amount[,]" Vincent's defense counsel was "having a terrible time seeing anything in there."

¶22. Several inferences may be drawn from Goodman's testimony. Because a "trace" amount of cocaine was found in Vincent's clothes, and a "trace" amount is an amount that one "can physically see," we may infer that the cocaine found in Vincent's pockets could be seen with the naked eye. However, because the same "trace" amount of cocaine was "a lot less" than one-tenth of a gram, "a very, very minute" amount which is "not a weighable amount," we may infer that it was extremely difficult to see. In other words, as Vincent's counsel pointed out and Goodman conceded, a person could have "a terrible time seeing" it. Therefore, the fact that the cocaine *could have been* seen does not establish that Vincent did, in fact, see it. It is entirely possible that the cocaine found in Vincent's pockets was visible, but Vincent never saw it or knew it was there. That possibility is tantamount to reasonable doubt.

¶23. The evidence presented at trial strongly favors this conclusion. Vincent was patted down and searched twice at the scene of the traffic stop, once by Officer Estes and once by Lieutenant Taylor. Presumably, he was searched again at the jail when he was booked. Unlike in **Hampton** and **Nance**, the officers did not find any contraband or controlled substances on Vincent, and the jail officials did not find any drugs when they seized Vincent's clothes. Further, Agent McWhirter did not find any drugs in the clothes even though he personally handled the clothes when he transported them to the crime lab. The

13

"trace" amount of cocaine in Vincent's pockets was first discovered by the forensic examiner at the Mississippi Crime Lab. And unlike the defendants in **Hampton** and **Nance**, Vincent did not admit to using the drugs or claim ownership of the cocaine. In fact, Vincent specifically denied any knowledge of any controlled substances in the car. Finally, the prosecution in **Hampton** proved Hampton's impairment was caused by drug use because Hampton had admitted to using the Talwin. Here, although Agent McWhirter testified that Vincent appeared impaired, the evidence introduced at trial did not establish that Vincent's impairment was the result of recent cocaine use.[7]

¶24. Beyond Goodman's testimony, the prosecution adduced no evidence whatsoever that Vincent knew the "trace" amount of cocaine was in his pockets. Thus, the State did not prove beyond a reasonable doubt that Vincent was "aware" of the cocaine's presence in his pockets, much less that he intentionally and consciously was in possession of it, both required elements of the crime of possession. **Dixon**, 953 So. 2d at 1112-13; **Smith**, 839 So. 2d at 497; **Bush**, 895 So. 2d at 843.[8] The evidence presented against Vincent reveals that "reasonable men could not have found beyond a reasonable doubt that [Vincent] was guilty

---

[7] Agent McWhirter testified that Vincent had stated during questioning that his impairment may have resulted from recent exposure to paint thinner, and Officer Estes testified that during the traffic stop and immediately prior to his arrest, Vincent had been drinking beer. The prosecution offered no evidence to contradict this testimony.

[8] The dissent asserts that the evidence regarding the bag of drugs on the back seat of the car and Vincent's excessive movement and reaching into that area are circumstantial evidence from which an inference can be drawn that Vincent was aware of the presence of the cocaine in his pockets. But Vincent was acquitted of possession of the drugs in the bag on the back seat of the car, so as far as this Court is concerned, he did not "possess" them. Thus, Vincent's alleged relationship to the bag of drugs found on the back seat of the car cannot support an inference that Vincent was aware of the presence of the "trace" amount of cocaine in two of his pockets.

. . . ." ***Dilworth***, 909 So. 2d at 736 (internal citations omitted). Suffice it to say, no evidence was put forth by the State that *anyone* knew the "trace" amount of cocaine was present in Vincent's pockets until the forensic examiner found it at the crime lab.

¶25. Therefore, the evidence was insufficient to convict Vincent of possession, and the trial court erred when it denied Vincent's motions for a directed verdict and for a JNOV. ***Id.*** Hence, the proper remedy is for this Court to reverse and render Vincent's conviction, "*i.e.* reverse and discharge."[9] ***Id.***

## CONCLUSION

¶26. Because the State did not prove beyond a reasonable doubt that Vincent Hudson was aware of the presence and character of the "trace" amount of cocaine in his pockets, or that he consciously and intentionally possessed it, the evidence put forth at trial was insufficient to support his conviction for possession of the cocaine. Therefore, we reverse the Court of Appeals and reverse and render Hudson's conviction and sentence and order him discharged.

¶27. **REVERSED AND RENDERED.**

**CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR AND KITCHENS, JJ., CONCUR. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND PIERCE, JJ.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶28. I would affirm the decisions of a Winston County jury, a Winston County circuit judge and a unanimous Court of Appeals. The issues raised on appeal are (*verbatim et literatim*):

---

[9] Since Vincent's conviction must be reversed, we do not address the proportionality of his sentence.

(1) Whether the mandatory sentence of life imprisonment without possibility of parole for possession of a trace amount of cocaine without considering the extenuating circumstances such as the proportionality of the type of conviction compared to the amount of cocaine petitioner was accused of having possession thereof and the fact that the petitioner has never been convicted as a drug trafficker constitutes cruel and unusual punishment prohibited under the Eighth Amendment; and

(2) Whether the trial court erred when it failed to grant appellant's motion J.N.O.V. or, in the alternative, a new trial, when the State failed to prove by legally sufficient evidence beyond a reasonable doubt all the essential elements of knowing and felonious possession of a trace amount of cocaine on his clothing and the jury returned a verdict of guilty on the meager amount of evidence where the substance in question is so small that it cannot be seen.

The Court of Appeals found no error. *Hudson v. State*, 2009 WL 311167 (Miss. Ct. App. Feb. 10, 2009). The majority, in reversing and rendering the petitioner's conviction, orders that the jury verdict must be set aside, opining that the evidence was insufficient to convict, and does not address issue one raised by the petitioner. (Maj. Op. at ¶8).

## Proportionality of Sentence

¶29.    The Court of Appeals found no merit in Hudson's constitutional argument. *Id.* at *3. I would affirm, as "this Court . . . [has] repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual." *Stromas v. State*, 618 So. 2d 116, 123-24 (Miss. 1993). The Court of Appeals correctly found that "Hudson's sentence . . . did not arise solely from his conviction of possession of cocaine. Hudson was sentenced to life without parole for his status as a habitual offender with a record as a violent offender." *Hudson*, 2009 WL 311167, at *3. Hudson has five previous convictions, two of which, armed robbery and aggravated assault of a law enforcement officer, are crimes of violence. Hudson has spent more than eighteen of his last

16

thirty-two years in the state prison system. In 1978, Hudson was convicted separately of aggravated assault on a law enforcement officer in October, possession of heroin in September, and felony shoplifting in April, and was given prison sentences of one, two, and five years by the circuit courts of Winston, Lauderdale and Jones Counties. However, he served less than three years. Freedom was short-lived, for in 1982 Hudson was convicted of armed robbery in Lauderdale County and received a sentence of thirty years. He served more than fourteen years of that sentence. Hudson's next conviction came in 2005 in Winston County. Hudson was convicted of felony DUI and received a sentence of five years, serving only one year and two months.

¶30.    Our statute mandates a sentence of life imprisonment without the possibility of parole for "[e]very person convicted in this state of a felony who shall have been convicted twice previously of any felony . . . and who shall have . . . served separate terms of one (1) year or more . . . and where any one (1) of such felonies shall have been a crime of violence . . . ." Miss. Code Ann. § 99-19-83 (Rev. 2007). This Court has recognized that "it is properly within the purview of the Legislature to determine the range of sentences, enunciating our citizens' determination of the social impact of harmful behavior." *Davis v. State*, 724 So. 2d 342, 344 (Miss. 1998). Regarding drug offenses in particular, the "the public has expressed grave concern [and] . . . [t]he legislature has responded in kind with stiff penalties . . . ." *Stromas v. State*, 618 So. 2d 116, 123 (Miss. 1993). The will of the people is expressed through their representatives. I would not only affirm the judgment, for the reasons stated *infra*, but also the sentence, for our statutes and caselaw confirm that the penalty is not grossly disproportional.

17

## Sufficiency of Evidence

¶31. The basis of my dissent necessarily focuses on the evidence presented to the jury, and the instructions of law given by the trial judge. I remain in accord with the time-respected principle that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dilworth v. State*, 909 So. 2d 731, 736 (Miss. 2005) (quoting *Jackson v. Va.*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). Our Court is required to view "the evidence in the light most favorable to the prosecution." *Id.* It is not the function of an appellate court to create or permit inferences that one or more of its members might draw from evidence to run contrary to the well-reasoned judgment of a jury. *See* **Seeling v. State**, 844 So. 2d 439, 443 (Miss. 2003) ("[T]his Court . . . gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence").

¶32. The arresting officer, Estes, related to the jury his observation of Vincent's physical demeanor at the traffic stop. He testified of Vincent's "extreme and unnecessary movement." He testified that Vincent "kept looking back toward my position and at one time reached back in the back seat of the car . . . . He . . . turned all the way around in the seat and reached back . . . ." He further testified that a bag of drugs was found "laying on top of a coat in plain view." Estes related that "[t]he back seat was full of junk. . . . clothes, a spare tire, a heater . . . ."

¶33. The narcotics detective, McWhirter, testified regarding Vincent's lack of mental acuity. "He seemed to me to be impaired. . . . having a hard time talking. I was having a hard time understanding a lot of what he was saying." When asked why he believed Vincent

18

was impaired, McWhirter replied, "The demeanor that he was in, his voice, . . . his speech, slurred, and I had had conversations with him before that were not that way."

¶34. A pat down of Vincent failed to disclose any controlled substances visible to the naked eye. However, after finding evidence of drugs in the car, including marijuana in the ash tray; marijuana in a cigarette package in Hillute's pocket; marijuana, ecstacy and cocaine in the bag behind the front seat (the same area where Vincent was observed reaching), the petitioner was arrested.

¶35. There was evidence of drugs other than the cocaine in, as opposed to on, Vincent's clothes. Cocaine was found inside the pockets of two different garments that Vincent was wearing. Additionally, marijuana was found in one of Vincent's pockets. Brandy Goodman, a forensic specialist "in the field of drug identification," was called to testify. She has been employed by the Mississippi Crime Laboratory for more than eight years and has a primary duty to "analyze substances submitted by law enforcement personnel for the presence or absence of a controlled substance." She has a Bachelor of Science degree with a major in molecular biology and a minor in chemistry. She earned a medical-technology certificate through the American Society of Clinical Pathology, and is certified by the American Board of Criminalistics as a technical specialist in drug identification. She was tendered as an expert witness in the field of drug analysis without objection by the petitioner. Goodman testified that she had used a gas chromatograph mass spectrometer and had run a standard to verify the results. What she found in the pockets was (1) cocaine and marijuana in Vincent's right front pants pocket; (2) cocaine in Vincent's right shirt pocket; (3) a substance for which the data was insufficient to identify in Vincent's left front pants pocket and right back pants

19

pocket, "which means the instrument picked up possibly something there, but there was not enough scientific data to verify"; and (4) no controlled substance in Vincent's left shirt pocket, left back pants pocket, and right front small pants pocket. Goodman further testified that "[a] trace amount is an amount that I can physically see that there is something there, but it is not a weighable amount of substance." She testified that, although it is common for a portion of the drugs to be destroyed in the testing process, she was able to save some of the cocaine in vials, which were admitted into evidence and "published" to the jury. Thus, the jury had before it her testimony and two vials containing the remainder of the cocaine that had come from Vincent's pants and shirt.

¶36. The majority opines that "[t]he State found it necessary to utilize the 'constructive possession' rationale regarding the drugs in the bag . . . but Vincent was acquitted of those charges. Thus, this appeal does not involve an issue of 'constructive' possession." (Maj. Op. at ¶12). This finding ignores that the jury rightly (based on the evidence) was given a constructive-possession instruction, which covered all four counts without distinction. This same instruction was proposed by the defendant. It incorporated a definition of constructive possession as found in *Dixon v. State*, 953 So. 2d 1108, 1112-13 (Miss. 2007). The State withdrew its proposed possession instruction. The instruction given to the jury was as follows:

> The Court instructs the jury that to constitute a possession, there must be sufficient facts to warrant a finding that Vincent Hudson was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. Constructive possession may be shown by establishing that the controlled substance was subject to the defendant's dominion and control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

20

The majority's disclaimer that this appeal does not involve an issue of "constructive possession" does not conform to the trial court's instruction and juror consideration of same. It cannot be honestly debated that Vincent's clothing, which contained the controlled substance, was not subject to his dominion and control. Thus, constructive possession was an issue before the trial court, and thus, necessarily before this Court.

¶37. The majority states that, because the State relied on constructive possession of the bag of drugs for which Vincent was acquitted; thus, "as far as this Court is concerned, he did not 'possess' [the drugs]." (Maj. Op. at ¶24, note 8). One can only state with a measure of certainty that the jury found that at least one element of possession of the drugs in the bag was not proven by the State beyond a reasonable doubt. However, an acquittal on those charges does not preclude consideration of the presence of all drugs, given the totality of circumstances surrounding his arrest and, specifically, for the undisputed evidence that drugs were determined to be on his person. The bag of drugs was presented as evidence. It must be viewed in like manner as any other evidence presented, with the jury entitled to give such weight to all evidence as only they deem appropriate, be it great or of no significance. *See Dilworth*, 909 So. 2d at 736. We are without the constitutional or statutory authority to disregard properly admitted evidence, no matter how slight we deem its evidentiary value. The majority states that "conscious intent to possess" is a necessary element. (Maj. Op. at ¶11). However, intent cannot be seen. It must be inferred, making it a classic jury issue. The jury had every right to infer, based on the totality of circumstances, that Vincent had "consciously exercised control over" the drugs scientifically determined (without objection) to be in his pockets. *See Dixon*, 953 So. 2d at 1113.

21

¶38.  The majority cites two cases in which the prosecution satisfied its burden of proving possession of a controlled substance.  *See **Hampton v. State***, 498 So. 2d 384 (Miss. 1986); ***Nance v. State***, 948 So. 2d 459 (Miss. Ct. App. 2007).  In ***Hampton***, the arresting officer testified that Hampton was impaired, just as the narcotics officer did here.  ***Hampton***, 498 So. 2d at 385.  No drugs were identified on Hampton at the time of arrest, but a syringe containing "some clear liquid" was found upon analysis at the crime lab to contain a trace amount of a controlled substance.  ***Id.***  The drug amount was so small that nothing was left over after the analysis.  ***Id.***  Here, the jury was presented with more. Vials of trace cocaine were offered into evidence and published to the jury, unlike in ***Hampton***.

¶39.  ***Nance*** was not a trace-evidence case.  ***Nance***, 948 So. 2d at 460.  A white powdery substance was found in a sandwich bag at the police station.  ***Id.***  Nance's conviction was affirmed without evidence of impairment as in this case.  However, all three cases offer a common thread, i.e., an object (syringe, sandwich bag, pockets of clothing) was determined by lab analysis to hold a small amount of a controlled substance.  Nance's and Hampton's convictions were affirmed.  *See **Hampton***, 498 So. 2d at 387; ***Nance***, 948 So. 2d at 461. Accordingly, those cases provide no precedential support to reverse petitioner's conviction.

¶40.  The State summed up the proof as follows:

> If you found trace amounts of cocaine in clothes, is that enough to convict somebody? No. But you find trace amounts of cocaine in somebody's clothes and you found that person was also right by a bunch of other drugs and the same kind of drugs, and you find that the officer saw the person put something in the area where he put those drugs; you find that the person also has trace amounts, that he was moving around, that he was acting like he was intoxicated, and you put all those things together. You have got the whole picture, and then that is enough to make a reasonable inference and look at the totality of the circumstances and to find him guilty.

22

This was a fair summary of the facts presented to the jury. The argument was couched to match the instruction offered. Thus, the jury's ultimate conclusion that Hudson had possessed drugs by having them in his dominion and control was supported, both factually and legally.

¶41. In reviewing a decision to deny a motion for directed verdict or judgment notwithstanding the verdict, it is not enough that we might have had a reasonable doubt, but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dilworth*, 909 So. 2d at 736. Applying this standard, I would affirm, and not substitute my take on the evidence (or regrettably, disregard evidence) to overrule the decision of a constitutionally appointed finder of fact, the jury.

**CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**