# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01007-SCT

*LAVAR WILLIAMS a/k/a LAVAR D. WILLIAMS*
*a/k/a LAVAR DAUNTE WILLIAMS a/k/a BOO*
*LOVE*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2019 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | KATIE NICOLE MOULDS |
| | CHRISTOPHER TODD McALPIN |
| | BRAD MARSHALL HUTTO |
| | KEVIN DALE CAMP |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH BRIGGS |
| | JUSTIN TAYLOR COOK |
| | GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| | ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/24/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. While he was incarcerated in the Madison County Jail, Lavar Williams's jailers

recorded numerous telephone conversations in which Williams appeared to be directing a

drug trafficking ring. A search of Williams's home revealed large amounts of marijuana and cocaine, as well as $93,259 in cash. Williams was subsequently charged and convicted of two counts of conspiracy and two counts of possession with intent to distribute. On appeal, Williams contends that he could not be in possession, constructive or otherwise, of drugs found in his home when he had been had been incarcerated for two months and others had access to the home. The Court of Appeals affirmed Williams's conviction on a constructive possession theory. We affirm as well, though we take this opportunity to clarify that Williams's conviction should be affirmed based on accomplice liability rather than constructive possession.

**FACTS**

¶2. The Court of Appeals ably recited the relevant facts:

At trial, Lieutenant Trey Curtis with the Narcotics Division of the Madison County Sheriff's Department testified that in December 2017 he began monitoring Williams's phone calls while Williams was in the Madison County Detention Center. Lieutenant Curtis testified that Williams made several calls to Jeremiah Kelly and used code words to discuss narcotics. As a result, Lieutenant Curtis obtained search warrants for Williams's residence on Kings Crossing in Madison County and Kelly's mother's residence on North Jackson Street in Madison County.

On January 27, 2018, law enforcement executed the warrants. Lieutenant Curtis testified that law enforcement found marijuana and cocaine at Williams's residence. They also found currency, scales, sandwich bags, priority-mail postal stickers, and drug ledgers. According to Lieutenant Curtis, the currency was divided into stacks, and on top of each stack were ledgers with names and amounts. Lieutenant Curtis testified that the ledgers corroborated information that he had overheard on Williams's phone calls with Kelly. On cross-examination, Lieutenant Curtis admitted that Williams had been in jail for approximately two months and therefore had not had access to his residence.

2

The State played portions of several of Williams's phone calls to Kelly for the jury. During the calls, Williams and Kelly discussed "T-shirts," "presents," and "shoes." Lieutenant Curtis explained that "T-shirts" was code for crack cocaine, and "presents" and "shoes" were codes for marijuana. Kelly assured Williams that he had written everything down and that everything was "copesetic."

During the calls, Williams and Kelly discussed someone named "Young." Lieutenant Curtis testified that a box found in the trash can suggested that Young lived in California. Then Williams referenced "Mark in the truck." Kelly asked, "Mark in the truck?" Williams clarified, "In the brown truck." Lieutenant Curtis testified he determined that Mark was a UPS driver. Later, Kelly told Williams that everything was "straight" with certain mail. According to Lieutenant Curtis, Williams told Kelly to send Young "750 times ten," which meant $750 per pound for marijuana. Lieutenant Curtis testified that "7,500 Young" was written on one of the ledgers.

Tommy Jones, Captain of the Narcotics Division of the Madison County Sheriff's Department, testified that he participated in the execution of the search warrant at Williams's house. Captain Jones testified that law enforcement found a safe inside a bedroom closet, containing what they suspected was marijuana and cocaine, $93,259, and a stolen fully automatic . . . MP5[-model submachine gun that had been stolen from the Jackson Police Department]. Additionally, Captain Jones testified that the ledgers mostly corroborated the phone calls between Williams and Kelly. On cross-examination, Captain Jones admitted that Williams had not had access to his house for approximately two months and that other people had access to the house.

Archie Nichols, with the Mississippi Forensics Laboratory, testified that the safe at Williams's residence contained 167.66 grams of cocaine, a Schedule II controlled substance, and 5,556.71 grams of marijuana, a Schedule I controlled substance. Additionally, 10.58 grams of cocaine and another .48 gram[s] of cocaine were found in Williams's kitchen

Finally, the State called Lenaris Milton to testify at trial. Milton had pleaded guilty to conspiracy to deliver marijuana in this case and was sentenced to serve five years. As part of his plea, he agreed to testify at Williams's trial. According to Milton, he grew up with Williams, and he, Williams, and Kelly were involved in the same drug business. According to Milton, he sold drugs for Williams even while Williams was in jail in January 2018. Milton specifically testified that Williams had called him from jail and

3

directed him to distribute drugs. Milton also testified that they used code words for drugs such as "presents" and "T-shirts." According to Milton, he helped his wife run a clothing store in 2018, but Williams did not have anything to do with it.

After the State rested its case, the defense moved for a directed verdict, which was denied. Then Williams testified. Williams's defense was that he had been incarcerated since December 4, 2017, and that other people had access to his residence while he was incarcerated. He admitted to calling Kelly from jail; however, he testified that they only discussed Christmas presents for his kids, not drugs. He also testified that when they discussed T-shirts, they were referring to T-shirts at Milton's clothing store that he helped run. Later, Williams testified that he never mentioned presents or T-shirts. According to Williams, he instructed Kelly to manage his appliance business. Williams testified that he received scratch-and-dent appliances from a man named Derek Young at Lowe's in Madison. Then he sold the appliances to individual buyers. Williams testified that when he said "$750," he was referring to refrigerators. According to Williams, he had never been around any drugs and did not know of any drug activity at his house.

After the defense rested its case, the State called Lieutenant Curtis as a rebuttal witness. Lieutenant Curtis testified that although they seized some appliances from Williams's house, they did not find any ledgers that referred to appliances.

. . . .

Ultimately, the jury found Williams guilty. . . . Now Williams appeals, claiming his convictions for possession with intent were not supported by sufficient evidence, and his trial counsel was ineffective for failing to file post-trial motions.

*Williams v. State*, No. 2019-KA-01007-COA, 2020 WL 7350420, at *1-3 (Miss. Ct. App. Dec. 15, 2020). The Court of Appeals majority concluded that the evidence was sufficient to support Williams's convictions for possession with intent, and it found his trial counsel had not been ineffective. *Id.* at *4-5.

¶3.     This Court granted certiorari to address the sufficiency of the evidence supporting Williams's convictions for possession with intent to distribute.

**DISCUSSION**

¶4.     On review of the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Pace v. State*, 242 So. 3d 107, 118 (Miss. 2018) (quoting *Swanagan v. State*, 229 So. 3d 698, 703 (Miss. 2017)). This Court must decide if "any rational trier of fact could have found each element of the crime beyond a reasonable doubt . . . ." *Mujahid v. State*, 324 So. 3d 275, 281 (Miss. 2021) (internal quotation marks omitted) (quoting *Pace*, 242 So. 3d at 119).

¶5.     To establish possession of a controlled substance, the State must produce evidence that a defendant (1) was aware of the presence of a substance, (2) was aware of the character of the substance, and (3) was consciously and intentionally in possession of the substance. *Haynes v. State*, 250 So. 3d 1241, 1244-45 (Miss. 2018) (quoting *Hudson v. State*, 30 So. 3d 1199, 1203 (Miss. 2010)).

¶6.     The third element, the defendant's conscious and intentional possession, can be established constructively if the evidence demonstrates the defendant had dominion or control over the substance. *Id.* at 1245 (quoting *Hudson*, 30 So. 3d at 1203). A finding of constructive possession requires a finding that the defendant had "some type of control over the drugs under the totality of the circumstances[.]" *Berry v. State*, 652 So. 2d 745, 750

5

(Miss. 1995) (citing *State v. Staley*, 872 P.2d 502 (Wash. 1994)). Evidence of ownership of substances or payment for substances would establish dominion or control over the substance. *Id.* at 751. Further, "one who is the owner in possession of the premises, or the vehicle in which contraband is kept or transported, is presumed to be in constructive possession of the articles found in or on the property possessed." *Dixon v. State*, 953 So. 2d 1108, 1113 (Miss. 2007) (quoting *Hamburg v. State*, 248 So. 2d 430, 432 (Miss. 1971)). This presumption can be rebutted. *Id.* (quoting *Hamburg*, 248 So. 2d at 432). But the fact that others had access to the premises, by itself, is not necessarily sufficient to rebut the presumption of constructive possession as a matter of law. *See Wolf v. State*, 260 So. 2d 425, 432 (Miss. 1972) ("It is true that it was possible some other person could put the marijuana on the back seat and over the sun visor without the defendant's knowledge, but this was a question for the jury."); *see also Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971).

¶7.     Contraband may also be possessed by more than one person at a time. "Two persons may have constructive possession, or one may have actual possession and the other constructive possession." *Johnson v. State*, 246 Miss. 182, 145 So. 2d 156, 158 (1962) (citing 103 A.L.R. 1313 (1936); 9 Am. Jur. *Burglary* § 86). Dominion and control constituting possession may be had "either directly or through another person." *Watkins v. State*, 101 So. 3d 628, 635 (Miss. 2012).

¶8.     And, in addition to joint possession, there is accomplice liability. Under Mississippi law, "[o]ne who aids and abets another in the commission of a crime is guilty as a principal." *Buchanan v. State*, 316 So. 3d 619, 631 (Miss. 2021) (internal quotation marks omitted)

6

(quoting ***Hughes v. State***, 983 So. 2d 270, 276 (Miss. 2008)). An accessory before the fact is one who "do[es] something that will incite, encourage, or assist the actual perpetrator in the commission of the crime." ***Malone v. State***, 486 So. 2d 360, 363 (Miss. 1986) (emphasis omitted) (internal quotation marks omitted) (quoting ***Crawford v. State***, 133 Miss. 147, 97 So. 534 (1923)). "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not." Miss. Code Ann. § 97-1-3 (Rev. 2020). Thus, "[i]t is permissible for [Williams's] indictment to charge the principal offense and for the State to proceed throughout trial as though [Williams] was an accessory before the fact." ***Johnson v. State***, 290 So. 3d 1232, 1239 (Miss. 2020). Aiding and abetting traditionally requires the defendant's presence during the commission of the offense, though that presence may be constructive. *See, e.g.*, ***Johnson***, 290 So. 3d at 1238. But accessory before the fact does not require the defendant's presence during the commission of the offense. ***Id.*** (citing ***Wilson v. State***, 592 So. 2d 993, 997 (Miss. 1991)).

¶9.     The jury in Williams's trial was instructed:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that ordinarily anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent by acting in concert with or under the direction of another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

7

Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime. Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator. In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

The accomplice-liability theory was reiterated by the prosecuting attorney, who advanced it as the State's theory of constructive possession. He preceded his reiterating of the instruction by arguing:

Now, you heard several times also that this defendant, Lavar Williams, was in the Madison County Detention Center. And we don't dispute that. He was there from, I think we decided, December 4th all the way through January the 27th. So he was at the Madison County Detention Center at the time, which brings me to the next instruction I want you to take a look at . . . .

¶10. Evidence adduced at trial established that Williams was aware of the presence of substances in his home. Williams's recorded coded conversations with Jeremiah Kelly established that Williams was aware of and approved the presence of marijuana and cocaine in his home. Documents found at Williams's home corroborated the substance of his coded conversations with Kelly—specific drug transactions. In his petition for certiorari, Williams does not contest his convictions for conspiracy, implicitly conceding that he was aware of the presence of drugs in his home.[1] Williams further admits that Kelly and Milton had access

---

[1] We are aware that Williams was also convicted of two counts of conspiracy to possess with intent to distribute and that this Court has sometimes suggested that accessory before the fact encompasses conspiracy. *See, e.g.*, **Malone**, 486 So. 2d at 364. But those

8

to his home; they were found at Williams's house at the time law enforcement executed its warrant to search the house for drug paraphernalia. And Milton testified that he, Williams, and Kelly were in the same drug business. Williams and Milton discussed the purchase and sale of drugs, and Milton bought and sold drugs at Williams's behest. Milton also testified that the organization was set up to allow Williams to direct Kelly how to dispose of the drugs from his jail cell.

¶11.   After reviewing the record, we conclude that the evidence was more than sufficient for a reasonable jury to find, beyond a reasonable doubt, that Williams was guilty of two counts of possession with intent to distribute on the theory that he was an accessory before the fact—that Williams did some act to "incite, encourage, or assist the actual perpetrator in the commission of the crime." *See Malone*, 486 So. 2d at 363 (internal quotation mark omitted). Further discussion would be academic, as an accessory before the fact "shall be deemed and considered a principal, and shall be indicted and punished as such." Miss. Code Ann. § 97-1-3.

¶12.   **AFFIRMED.**

---

authorities were not addressed to double jeopardy and referred to the colloquial definition of conspiracy rather than the legal one. *See id.* In fact, each offense contains elements not present in the other, which precludes a finding of double jeopardy. *See Warren v. State*, 187 So. 3d 616, 623 (Miss. 2016); *see also Grandison v. State*, 506 A.2d 580, 617 (Md. 1986). Conspiracy requires *agreement* to possess drugs, while accessory before the fact to drug possession requires only some act "that will incite, encourage, or assist the actual perpetrator in the commission of the crime." *See Malone*, 486 So. 2d at 363 (internal quotation mark omitted) (quoting *Crawford*, 133 Miss. at 147); *Grandison*, 506 A.2d at 617. And drug possession (whether as a principal or an accessory before the fact) requires a completed offense, which conspiracy does not. *See, e.g.*, *Henderson v. State*, 323 So. 3d 1020, 1024 (Miss. 2021).

**RANDOLPH, C.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., COLEMAN AND GRIFFIS, JJ.; MAXWELL, J. JOINS IN PART.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶13. I agree with the majority's affirmance of Williams's conviction. But I disagree with its reasoning "that the evidence was more than sufficient for a reasonable jury to find, beyond a reasonable doubt, that Williams was guilty of two counts of possession with intent to distribute *on the theory that he was an accessory before the fact[.]*" Maj. Op. ¶ 11 (emphasis added). The majority bestows upon the State the benefit of a legal theory that is not to be found in its brief. That Williams may have been an accessory before the fact is not mentioned in the appellate brief of either party.[2] Instead the State has argued consistently throughout the entire appeal process that Williams was guilty under a theory of constructive possession. I would find that the State's evidence was sufficient to convict Williams and to affirm that conviction on the theory of constructive possession.

¶14. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide [whether] rational jurors could have found the State proved each element of the crime." ***Lenoir v. State***, 222 So. 3d 273, 279 (Miss. 2017) (citing ***Poole v. State***, 46 So. 3d 290, 293 (Miss. 2010)). Further, "[w]e are not required to decide—*and in fact we must refrain from deciding*—whether *we think* the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." ***Id.*** (internal quotation marks omitted) (quoting ***Poole***, 46

---

[2]There was no oral argument in this appeal.

So. 3d at 293-94).

¶15.   This Court has established the following framework for constructive possession cases:

> [W]hat constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible to a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. . . . Constructive possession may be shown by establishing that the drug involved was subject to [the defendant's] dominion or control.

*Haynes v. State*, 250 So. 3d 1241, 1244-45 (Miss. 2018) (second alteration in original)

(quoting *Hudson v. State*, 30 So. 3d 1199, 1203 (Miss. 2010)). Additionally,

> this Court has affirmed a conviction based on constructive possession when: (1) The defendant owned the premises where the drugs were found and failed to rebut the presumption that he was in control of such premises and the substances within; or (2) the defendant did not own the premises but was sufficiently tied to the drugs found there by (a) exerting control over the premises when he knew or should have known of the presence of the substance or (b) placing himself in the midst of items implicating his participation in the processing of the substance.

*Terry v. State*, 324 So. 3d 753, 756 (Miss. 2021) (quoting *Dixon v. State*, 953 So. 2d 1108, 1113 (Miss. 2007)). This Court has held that there is a rebuttable "presumption of constructive possession due to ownership of the premises[,]" which states:

> one who is the owner in possession of the premises, or the vehicle in which contraband is kept or transported, is presumed to be in constructive possession of the articles found in or on the property possessed. The presumption of a constructive possession, however, is a rebuttable presumption and must give way to the facts proven. Moreover, the rebuttable presumption of constructive possession does not relieve the State of the burden to establish defendant's guilt as required by law and the defendant is presumed to be innocent until this is done.

*Dixon*, 953 So. 2d at 1113 (quoting *Hamburg v. State*, 248 So. 2d 430, 432 (Miss. 1971)).

11

¶16. The State asks this Court to find that the evidence was sufficient and to affirm Williams's conviction on the theory of constructive possession. In its principal brief, the State argues that "[t]he evidence presented at trial showed that Williams had dominion and control over the drugs." In its supplemental brief, the State argues that it "proved that Williams owned the home where the drugs were found and exercised dominion and control over the drugs[]" and that "Williams's own telephone conversations proved that he was directing and controlling the drug operation from his home." This Court has recognized that "[p]ossession of a controlled substance may be . . . individual or joint." *Haynes*, 250 So. 3d at 1246 (internal quotation marks omitted) (quoting *Dixon*, 953 So. 2d at 1112). "Two or more persons may be in possession where they have joint power of control and an inferable intent to control jointly." *Id.* (internal quotation marks omitted) (quoting *Wolf v. State*, 260 So. 2d 425, 432 (Miss. 1972)). The State provided evidence that established the house was Williams's home and that Williams was directing Kelly from jail concerning what Kelly was to do with the drugs. As the majority correctly posits, "[d]ominion and control constituting possession may be had 'either directly or through another person.'" Maj. Op. ¶ 7 (quoting *Watkins v. State*, 101 So. 3d 628, 635 (Miss. 2012)).[3] Additionally, the State played several

---

[3]Federal courts also have recognized this principle:

> We also have recognized that a defendant may exercise this ability or power personally or through others who have an adequate tie to the defendant. *See* [*United States v.Al-Rekabi*, 454 F.3d 1113, 1120 (10th Cir. 2006)] ("The bedrock of constructive possession—whether individual or joint, *whether direct or through another person*—is the *ability* to control the object.") (first emphasis added); *United States v. Lindsey*, 389 F.3d 1334, 1339 (10th Cir. 2004) ("The evidence . . . showed Defendant maintained constructive possession of the firearms while Watson transported them [separately] in the

recorded telephone conversations so the jury could hear coded communications between Williams and Kelly, in which Williams was alleged to have directed Kelly to purchase and sell drugs. "Matters regarding the weight and credibility of the evidence are to be resolved by the jury." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993) (citing *Neal v. State*, 451 So. 2d 743, 758 (Miss. 1984)). The recorded telephone calls also demonstrated that Williams had awareness of the presence and character of the marijuana and the cocaine that were in his residence. A reasonable jury could have determined that the rebuttable ownership presumption had not been rebutted, even though Williams was in jail at the time law officers executed their search of Williams's home, because he still was exercising dominion and control over his house through his instructions to Kelly. Even if the presumption were rebutted, a reasonable jury could have determined that Williams was exercising dominion and control over the drugs "either directly or through [Kelly or Milton.]" *Watkins*, 101 So. 3d at 635. Therefore, having viewed the evidence in the light most favorable to the State, I am

---

U-Haul because he exercised dominion and control over Watson and the U-Haul. Defendant, although not in actual possession of the firearms at the time of his arrest, had both the power and the intention at the relevant time to exercise dominion and control over the firearms, either directly or *through Watson*." (emphasis added); *United States v. Carter*, 130 F.3d 1432, 1441 (10th Cir. 1997) (holding that the defendant had constructive possession of drugs that were being transported by a third party based on a delivery agreement he made with the driver that made it "reasonable to infer [that the defendant] had the ability to guide the destination of the cocaine"); *cf.* [*United States v.*] *Massey*, 687 F. 2d [1348, 1354 (10th Cir. 1982)] (stating that a defendant may have constructive possession over narcotics when he or she has "some appreciable ability to guide the destiny of the drug" (quoting *United States v. Staten*, 581 F.2d 878, 883 (D.C. Cir. 1978))).

*United States v. King*, 632 F.3d 646, 652 (10th Cir. 2011) (second and third alterations in original).

persuaded that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Haynes***, 250 So. 3d at 1244 (internal quotation mark omitted) (quoting ***Shelton v. State***, 214 So. 3d 250, 256 (Miss. 2017)).

¶17.    Because the State adduced credible evidence that Williams had controlled the drugs through others, the evidence supports the State's theory that Williams constructively possessed the drugs. Yet the majority imputes to the State and decides the case on the unargued theory of accessory before the fact. The majority's analysis is founded upon jury instruction S-9. Maj. Op. ¶ 9. The majority says that "[t]he accomplice liability theory was reiterated by the prosecuting attorney, who advanced it as the State's theory of constructive possession." Maj. Op. ¶ 9. While the instruction's main thrust is its articulation of an agency theory, it does make brief mention of the concept of aiding and abetting in one sentence that is quite confusing because it is out of context with the rest of the lengthy instruction in which it appears. The confusion fomented by that instruction is exacerbated by its reference to "mere presence at the scene of the crime," which is inconsistent with the State's proof of Williams's involvement during his incarceration in a jail that was remote from the principal situs of the crime, his residence. In contrast, the State was granted four jury instructions that explicitly informed the jury of the law concerning constructive possession in Mississippi. The State argues correctly that constructive possession may be established if an individual has dominion or control over an item "either directly or through another person." ***Watkins***, 101 So. 3d at 635. Here, the State presented evidence that Williams had dominion and control over the drugs through Kelly and Milton. Viewing the evidence in the light most favorable

14

to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of two counts of possession with intent to distribute on the theory of constructive possession. *See **Haynes***, 250 So. 3d at 1244. The majority is mistaken in basing its affirmance on a prosecution theory different from that which was argued ably to this Court by the attorney general.

**KING, P.J., COLEMAN AND GRIFFIS, JJ., JOIN THIS OPINION. MAXWELL, J., JOINS THIS OPINION IN PART.**