CARTER v. STATE.*

(In Banc.   June 6, 1927.   Suggestion of Error Overruled June 21, 1927.)

[113 So. 177.   No. 26341.]

1. HOMICIDE. *Evidence held to sustain conviction for murder.*
   Evidence in prosecution for murder *held* sufficient to sustain conviction.

2. CRIMINAL LAW. *Supreme court cannot pass on qualifications of jurors where names of jurors comprising completed jury do not appear in record.*
   Where names of jurors comprising completed jury do not appear in judgment of court or elsewhere in record, supreme court cannot pass on qualifications of jurors as shown by the *voir dire* examination, since it is impossible to tell from record what jurors tried case.

3. JURY. *Knowledge that codefendant had been previously tried and convicted would not disqualify prospective juror.*
   Knowledge that codefendant had been previously tried, convicted and sentenced to be hanged would not disqualify a prospective juror, who was otherwise qualified.

4. CRIMINAL LAW. *Capacity of ten-year-old boy to testify cannot be raised for first time on motion for new trial.*

Lack of qualification of ten-year-old boy to testify cannot be raised for first time on a motion for new trial, but must be raised while witness is on stand, so that court may have opportunity of inquiring into and passing on it while testimony is being given.

5. HOMICIDE. *Malice is implied from intentional killing.*
Malice is implied from any intentional killing which the law does not make justifiable or excusable.

6. HOMICIDE. *Motive held established by testimony relative to rifling deceased's pockets after he was shot.*
Motive for murder *held* sufficiently established by testimony of witness relative to defendant's rifling pockets of deceased after he was shot down and rendered helpless.

7. CRIMINAL LAW. *Defendant in murder prosecution, failing to request manslaughter instruction, cannot, on appeal, complain of failure to give such instruction.*
Defendant in murder prosecution cannot complain, on appeal, of failure to give manslaughter instruction if evidence had warranted it, where he failed to request such instruction.

8. CRIMINAL LAW. *Defendant cannot complain of court's adjourning without opportunity for testimony on motion for new trial, where record fails to show offer.*
Defendant cannot complain of court's adjourning without giving him opportunity to offer testimony in support of motion for new trial, where record fails to show that he offered any evidence in support thereof, or requested further time or opportunity therefor, or made known to court his purpose or desire to offer such testimony.

---

*Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 1056, n. 20; p. 1146, n. 52; 17CJ, p. 66, n. 15; p. 167, n. 77; p. 169, n. 7 New; Homicide, 30CJ, p. 142, n. 74 New; p. 299, n. 54; p. 310, n. 25; p. 397, n. 24; Juries, 35CJ, p. 335, n. 76 New. Malice implied from intent of slayer to do wrong, see 13 R. C. L. 772; 3 R. C. L. Supp. 82. As to sufficiency of evidence to show motive for killing, see 13 R. C. L. 910; 3 R. C. L. Supp. 105; 5 R. C. L. Supp. 717.

APPEAL from circuit court of Chickasaw county.
HON. T. E. PEGRAM, Judge.

James Carter was convicted of murder, and he appeals. Affirmed.

*L. P. Haley,* for appellant.

Appellant was a boy fifteen years old who was jointly indicted with White McAllister for the murder of Randle Logan. The sole witness for the state who saw the killing was a negro boy of ten years. This infant of ten years was not instructed by the court or any one before testifying as to the nature and meaning of an oath and the consequences that might result from his testimony.

No malice was proved by the state. No malice aforethought was shown. 1 Wharton's Criminal Law (11th Ed.), ———— The burden of proof never shifts in a criminal case. *Hampton* v. *State,* 54 So. 722.

We think the instructions for the state are improper and inadequate, especially the instruction defining degrees of punishment. This instruction should have set out a definition of manslaughter, but it did not. 1 Wharton's Criminal Evidence (10th Ed.), page 669.

On the question of the jurors on *voir dire* examinations, we submit a few authorities that appear to us to be conclusive that this case ought to be reversed and remanded. *Klyce* v. *State,* 79 Miss. 652; *Fugate* v. *State,* 82 Miss. 189; *Murphy* v. *State,* 92 Miss. 203.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

I. Counsel for appellant argues that the state failed to prove malice. The record shows that this defendant and another hunted for deceased and when they found him, they engaged him in conversation and then shot and killed him, without justification, excuse or mitigating circumstances. Under these facts the law implies malice. This law is so well settled I do not deem it necessary to cite authority.

Counsel also argues that the state failed to prove motive. Where the crime is proved by an eye-witness, as it was in the case at bar, it is unnecessary to prove mo-

tive in order to make out a case of murder. However, in this case the state proved that after appellant and McAllister had murdered the deceased, they robbed his person. This robbery was the motive for the crime.

II. Joe Crumpton testified that his mother said he was ten years of age. No objection was made to this testimony. No motion was made to exclude the same. The court did not qualify him as a witness. Counsel now complain that this witness was allowed to testify without being qualified by the court. See *Peters* v. *State,* 106 Miss. 333.

The competency of this testimony was a judicial question to be determined by the court, if questioned by counsel for the defendant. It was not so questioned, and it was not incumbent upon the court to determine it prior to its introduction.

III. Counsel for appellant now complains that the appellant did not have a fair and impartial jury in the court below. The law is well settled that a defendant is entitled to a jury of twelve men who are fair and impartial. It is equally well settled that he is not entitled to any particular man or men on the jury. From the record in this case it is impossible to tell what jurors tried this case. It does not appear from the record that any juror objected to by counsel for defendant tried this cause. *Donahue* v. *State,* 107 So. 15.

IV. Counsel for the appellant complains that the court erred in not granting an instruction defining manslaughter and authorizing the jury to find the defendant guilty of manslaughter. Even though the testimony was such that it would justify the court in granting a manslaughter instruction, the defendant cannot now complain. He did not request such an instruction. See *Tatum* v. *State,* 107 So. 418; *Grady* v. *State,* 109 So. 728.

COOK, J., delivered the opinion of the court.

In the circuit court of the Second judicial district of Chickasaw county, the appellant, James Carter, and White McAllister were jointly indicted for the murder of Randle Logan. A severance was granted, and this appellant was tried and convicted, and was sentenced to suffer the death penalty, and from this conviction and sentence he has prosecuted this appeal.

The state offered two witnesses, Willie Logan, the wife of the deceased, and Joe Crumpton, who testified as to the identity of the deceased's assailants and the facts of the killing. The witness Willie Logan testified that her husband came home about 6 o'clock p. m., and went immediately to his barn where Joe Crumpton, who worked for him, was engaged in feeding the stock; that she was in their dwelling house preparing supper; that the appellant and White McAllister, who were well known to her, came to the house inquiring for her husband; that she told them where he was, and as they started in that direction her husband and Joe Crumpton came upon the scene; that they spoke to her husband and told him that they wanted to see him; that he told them to come with him to the hogpen, a short distance from the house, and they all proceeded in that direction; that in a few minutes she heard several pistol shots; that she started to the scene of the shooting and met Joe Crumpton, who informed her that they had shot her husband, and that she found her husband dead.

The witness Joe Crumpton, a boy, testified that he knew the appellant and White McAllister well, and had known them for some time; that he was working for Logan, and was with him just prior to and at the time of the shooting; that as he and Logan were going from the barn to the hogpen with corn for the hogs they met the appellant and McAllister near the dwelling house, and they all proceeded together to the hogpen; that White McAllister asked Logan when he was going to pay him

for those clothes, and Logan replied, "Saturday morning;" that McAllister said, "Damn you, no, you won't; you will pay me right now," and thereupon shot Logan twice; that he then asked the appellant what to do, and the appellant replied, "Let him down," and at once drew his pistol and began shooting Logan; that when Logan fell, the appellant snatched the deceased's pocketbook from his hip pocket and both he and McAllister then fled.

The witness Willie Logan admitted, on cross-examination, that immediately after the homicide she told certain persons that she did not know who was with McAllister, but she testified that at the time she made this statement she was hysterical, nervous, and excited; that the appellant lived only about a half mile from her, and she had known him well for a long time; and that she recognized him when he came to her home just a few moments before the shooting. The witness Joe Crumpton testified, on cross-examination, that shortly after the homicide he told the officers that he did not know who killed the deceased, but he explained this by saying that he was then afraid to tell it, but that later in the night he informed them that the appellant and White McAllister killed him, and thereupon the officers arrested the appellant.

The defense interposed in the court below was an *alibi.* Several witnesses testified that they were with the appellant at the time the pistol shots were fired, and that he was not present at the scene of the homicide.

Counsel for the appellant first makes a general complaint that the appellant was not tried before a fair and impartial jury, and that he was forced to exhaust his peremptory challenges on jurors who were disqualified, but it is impossible to tell from this record what jurors were peremptorily challenged, or who composed the jury which tried the case. The record contains the *voir dire* examination of the prospective jurors, and it shows that the court qualified twelve jurors and tendered them to the state, and that the state thereupon peremptorily ex-

cused three of them. The names of those excused by the
state are not shown by the record, and it is impossible to
tell who remained on the jury. The court again filled
the panel and they were accepted by the state and ten-
dered to the defendant, and he excused eight of them.
The names of those excused are not shown. This proc-
ess was continued until the panel was finally filled and
accepted by the state and the defendant. In no instance
were the names of the jurors peremptorily excused, or
of those remaining on the jury, given, and since the names
of the jurors comprising the completed jury do not ap-
pear in the judgment of the court or elsewhere in the
record, it is impossible to tell from the record what ju-
rors tried the case, and consequently, we cannot pass
upon the qualifications of these jurors as shown by the
*voir dire* examination of prospective jurors. The de-
fendant was only entitled to demand a trial by a fair
and impartial jury, and there is nothing in this record
to show that he has not received such a trial. The only
juror to whom the appellant makes specific objection was
a Mr. Springer. On the *voir dire* examination of this
juror, he stated that he knew what the verdict was in
the case of White McAllister, who was jointly indicted
with this appellant. The appellant's codefendant, White
McAllister, had been previously tried, convicted, and
sentenced to be hanged, but knowledge of that fact would
not disqualify a prospective juror in this case, who was
otherwise qualified.

On the motion for a new trial, for the first time, ob-
jection was made to the admission of the testimony of
the witness Joe Crumpton, on the ground that on account
of his age he was incapacitated to testify, or that his
capacity to give testimony was not shown or passed upon
in any preliminary inquiry. This boy was offered as a
witness on behalf of the state, and testified without ob-
jection. He stated that he was about ten years old, and
the court was not requested to and did not inquire into
the question of his capacity to give testimony. His testi-
147 Miss.—12.

mony gave no evidence of want of testimonial capacity, but, on the contrary, it shows unusual intelligence and capacity if, in fact, he is only ten years of age. If, however, there appeared to be any want of testimonial qualification on the part of this witness, that question cannot be raised for the first time on a motion for a new trial. It must be raised while the witness is on the stand, so that the court may have an opportunity of inquiring into and passing upon it while the testimony is being given. In the case of *Peters* v. *State,* 106 Miss. 333, 63 So. 666, the testimony of a six year old girl was introduced, and at the conclusion of the evidence for the state a motion was made to exclude it on the ground that the testimony of this witness was "incompetent because she was not shown to be such a witness as can testify in this cause on account of her age and mental condition." This motion was overruled, and the action of the court in so doing was assigned as error, and, in passing upon the question, this court said:

"The question of the capacity of a witness to give testimony cannot be raised in this method. It must be raised while the witness is on the stand so that the court may have an opportunity of inquiring into and correctly deciding it. If we concede, however, for the purpose of the argument, that this question was properly raised, the result must be the same. A child six years of age is not merely by reason of that fact disqualified as a witness."

The appellant makes a general complaint that, on the night of the killing, the witness Joe Crumpton did not implicate the defendant until after he was placed in charge of a Mr. Anderson, who was in the service of the state, the implication being that the witness was subjected to some sort of duress. There is, however, absolutely nothing in this record to support this assignment.

The appellant next seeks a reversal on the ground that the evidence fails to show any motive or malice. The evidence of the state shows that the appellant and another hunted the deceased, and when they found him,

they engaged him in conversation, and then shot him and killed him without excuse, justification, or mitigating circumstances, and malice is implied from any intentional killing which the law does not make justifiable or excusable. *Hawthorne* v. *State,* 58 Miss. 778. The facts surrounding the killing were fully shown by the testimony of an eyewitness, which, if believed, make a clear case of murder, and in such case it is unnecessary to show a motive for the killing, but if it had been necessary the motive was sufficiently established by the testimony of the witness as to the rifling of the pockets of the deceased after he was shot down and rendered helpless.

The appellant next contends that the court below should have granted an instruction submitting to the jury the issue of manslaughter. The testimony in this record presents no element of manslaughter, but, if believed, it makes a clear case of murder. If, however, the evidence had warranted the giving of a manslaughter instruction, this appellant cannot now complain that one was not given, since he failed to request such an instruction. *Tatum* v. *State,* 142 Miss. 110, 107 So. 418, and authorities there cited.

Finally, the appellant assigns as error the overruling of his motion for a new trial, and, in support of this assignment, counsel states, *dehors* the record, that the jury returned its verdict about noon on the last day of the court; that soon thereafter he filed the motion for a new trial; and that about 7:30 o'clock that evening the court overruled this motion, and finally adjourned the term without the appellant being asked or given opportunity to offer testimony in support of the motion.

Each and every ground of the motion for a new trial was based upon matters which already appeared of record in the cause, and we fail to perceive the purpose to be accomplished by the introduction of testimony, but, in any event, the appellant cannot complain, for the reason that the record fails to show that he offered any evidence in support of the motion, or that he requested further

time or opportunity to offer such testimony, or made known to the court his purpose or desire to offer such testimony.

We have carefully examined all the assignments of error, and we find no reversible error in the record. The evidence fully supports the verdict, and, consequently, the judgment of the court below will be affirmed, and Friday, July 15, 1927, is fixed as the date for the execution of the sentence of the court.

*Affirmed.*