ALLGOOD *v.* STATE.

(Division B. June 10, 1935.)

[161 So. 756. No. 31517.]

28

**E. C. Barlow**, of Brookhaven, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, Elton Allgood, jointly with one Oscar Pell, was indicted for the burglary of a store in Brookhaven. Immediately preceding the trial of appellant, Oscar Pell had been tried and convicted of another and different burglary, in which the appellant was not implicated. The appellant moved the court to postpone his trial until the following week because of the conviction of Pell by the jury of the week, stating in his application that there would be a continuance of the court for another week, a fresh jury being drawn which would not have been subjected to hearing the case against Pell. From the motion, and the statements made thereon in open court, it appeared that the offense for which Pell was convicted was a separate and distinct one, with which Allgood had no connection. The court overruled the motion, and this constitutes the chief assignment of error. There was no record made of the voir dire examination of the jurors, and it was not shown, on the motion for a new trial, that any juror had prejudged the case, or that there was any unfairness or partiality.

The state's witness, one Allen, was not indicted for the burglary, but aided Pell and Allgood in transporting the goods away from Brookhaven after its commission. He testified that he came into Brookhaven on the afternoon of the burglary, in company with another; that Pell called him to the sidewalk, and told him that they ''had something;'' that after taking his companion to his destination he returned to Pell, and they drove around town, located the night police, and finding that he was not near the scene of the burglary, drove to that place. Allgood came out of an alleyway, on which the store in question was situated, with his arms full of cigarettes, and stated in his presence that they were stolen. They carried the cartons of cigarettes some distance in the

country, to a named residence, where they removed the state revenue stamps from the packages, and then carried them to another place where a small store and filling station was operated, and sold them to the owner of the store, representing to him that they were bootlegged. Pell and Allgood divided the proceeds of the sale, after giving witness two dollars and a carton of the cigarettes for assisting them. Allgood's testimony was corroborated by the man at whose residence the stamps were removed, and also by the owner of the small store and filling station, who purchased them.

The defense was an alibi, evidence being offered to show that the defendant was at a different place, and with a different party, accounting for himself up to two o'clock on the night of the burglary, and proving that he was at a certain place, went to sleep there, and on the following day drove another party. He was corroborated by the wife of the man to whose place the cigarettes were carried and the revenue stamps removed, she having testified that defendant was not at their home that night.

The manager of the store proved the value of the cigarettes to have been largely in excess of the price at which they were sold to the small store owner.

The defendant also proved by some witnesses that his reputation was good in the community in which he lived; and there were also witnesses for the defendant who testified that the prosecuting witness had a bad reputation for veracity in the neighborhood in which he lived; but the sheriff testified that the state prosecuting witness—the main witness—had a good reputation. The defendant was convicted, and given a sentence of five years in the state penitentiary.

Whether or not to grant a continuance is largely discretionary with the trial judge. We have examined the record in this case, and find no reason to think that the judge abused his discretion. At the time of overruling

the motion, he stated he would see that the accused got a fair trial; and there is nothing in the record to show that the jury were prejudiced, or that any of the jurors knew anything about the case until the evidence was presented. It has been held by this court in Carter v. State, 147 Miss. 171, 113 So. 177, that a juror who knew of the trial and conviction of the codefendant of an accused person was not disqualified to serve as such juror. In Ladner v. State, 148 Miss. 243, 114 So. 341, it was held that a jury which had heard testimony in a liquor case might try a similar case in which the same witnesses testified with reference to other sales of liquor made on the same night as the sale for which the defendant was indicted. We find no error in the overruling of the motion for a continuance.

It is complained of as error that the court erred in instructing the jury that if they believed from the evidence, beyond a reasonable doubt, "that Oscar Pell did, on or about the 30th day of May, 1934, willfully, unlawfully, feloniously and burglariously break and enter the store building of the Great Atlantic & Pacific Tea Company in the city of Brookhaven, Lincoln county, Mississippi, where cigarettes and other personal property were kept for sale by feloniously and burglariously and forcibly breaking and forcing open a transom window on the front of the said building and did, then and there, willfully, unlawfully and feloniously take, steal and carry away cigarettes, the personal property of the Great Atlantic & Pacific Tea Company and of the value of twenty-five dollars, and if you further believe from the evidence in this case beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the defendant, Elton Allgood, was present aiding and assisting therein, then the defendant, Elton Allgood, is guilty as charged and it is your sworn duty to so find."

The criticism of the instruction is that it does not tell the jury that the reasonable doubt which would authorize an acquittal may arise from the lack of evidence. The instruction is not subject to this criticism because, in addition to the expression, "beyond a reasonable doubt," it says, "and to the exclusion of every other reasonable hypothesis." This is equivalent to telling the jury that doubt may arise from the lack of evidence; "to the exclusion of every other reasonable hypothesis," necessarily expresses the idea that there is no other reasonable hypothesis than that of guilt.

It is also complained that the court gave to the state the instruction so frequently complained of, that, "you do not have to know that the defendant, Allgood, is guilty before you convict him, but that in order for you to be warranted in returning a verdict of guilty as charged in the indictment, it is only necessary that you believe from all the evidence and facts and circumstances in evidence, beyond all reasonable doubt and to the exclusion of every other reasonable hypothesis that the defendant is guilty." We have uniformly refused to reverse for the giving of this instruction. In fact, the jury are not required to know that any person is guilty, but are to believe from the evidence, beyond a reasonable doubt, that he is guilty. Knowledge is not always attainable, and usually a juror having knowledge of the facts of the case, if this be disclosed, will be deemed incompetent. The jury are supposed to go into the jury box with an open mind, and a disposition to do justice according to the evidence.

We think the evidence is sufficient to sustain the conviction, and that there was no reversible error in any of the proceedings in the trial. Consequently, the judgment will be affirmed.

Affirmed.