465 So.2d 999 (1985)
Grady Lee SMITH
v.
STATE of Mississippi.
No. 54815.
Supreme Court of Mississippi.
February 20, 1985.
Rehearing Denied April 10, 1985.
*1000 James C. Mayo, Fair & Mayo, Louisville, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
This is an appeal from a criminal conviction in the Circuit Court of Winston County, Clarence E. Morgan, Jr. presiding. Grady Lee Smith was indicted for uttering a forged check and, following a mistrial, retried, convicted and sentenced as a habitual offender under Miss. Code Ann. § 99-19-81 to fifteen years at the Mississippi Department of Corrections.
Smith appeals, assigning as error:
(1) The trial court erred in denying appellant's challenge for cause of certain jurors;
(2) The trial court erred in overruling appellant's motion to suppress his post-conviction confession;
(3) The trial court erred in sentencing appellant to the maximum sentence without eligibility for probation or parole.

I.
On November 25, 1981, 28 year-old Grady Smith purchased four pairs of children's shoes from R.A. Herrington at Budget Shoe Store in Louisville, MS. The total purchase price of the shoes was $32.35. Smith gave Herrington a check for $115.95 and received $83.60 cash as change.
The check which Smith used to purchase the shoes was drawn on the account of Woodward & Woodward and made payable to "Larry Roach". Smith endorsed the back of the check as "Larry Roach". When Mr. Herrington presented the check to the Bank of Louisville later that day, payment was refused as the Woodward & Woodward account had been closed since 1976.
On December 2, 1981, Herrington spotted Smith in the downtown Louisville area and contacted Chief of Police Mac Parkes. Parkes approached Smith in Dud's Clothing *1001 Store on Church Street at approximately 9:30 a.m., placed Smith under arrest and took him to the Louisville police station. Prior to advising the appellant of his rights, Chief Parks and Officer Ted Carter began questioning Smith who denied any involvement with the check cashing incident. Following this initial interrogation, Smith was taken to the Louisville courthouse, placed in a lineup and identified by Mr. Herrington.
Following the lineup Chief Parkes, Officer Carter, and Officer Ricky Calloway proceeded to the home of Pearline Smith, the mother of the appellant. No search warrant was obtained; however, Officers Carter and Calloway testified that Mrs. Smith gave them permission to search the home. According to Mrs. Smith, the officers walked into the house after her son opened the door and, at no time, were given permission to search the home. While searching the home, the police found four pairs of shoes from the Budget Shoe Store. Appellant Smith was advised of his rights at approximately 10:45 a.m. Smith was told that he had been picked out of the lineup and that the shoes had been found at his mother's home. At 11:45, Smith signed a statement in which he admitted forging the check.

II.
The first assignment raises the question of whether the trial court erred in denying appellant's challenge for cause of certain jurors. At trial defense counsel challenged Juror James O. Stanley, a brother-in-law of Chief of Police Mac Parkes, on the ground that the Chief of Police would be a witness in the case. The court declined the challenge for cause on the ground that Stanley had stated on voir dire that he would not be influenced by the fact that his brother-in-law would be a witness. Defense counsel also challenged Francis S. Ball on the ground that, as a former member of the Louisville Board of Aldermen, she had previously been an employer of Chief Mac Parkes and Officer Ted Carter. The court refused this challenge for cause. The record reflects that defense counsel used one of its peremptory challenges to eliminate Ms. Ball from the jury. The record does not reflect whether a peremptory challenge was exercised to eliminate James Stanley.
In Gardner v. State, 145 Miss. 215, 110 So. 589 (1926), the appellant challenged the trial court's denial of defense challenge for cause of a juror who was the father of a deputy sheriff who would be testifying for the state. This Court stated:
On his voir dire examination he [the deputy sheriff's father] testified that he would weigh his son's testimony in the case as he would that of any other witness. In all other respects he qualified as a juror in the case. Appellant challenged H.C. McMaster as juror for cause. His challenge was disallowed by the court, and before the completion of the jury appellant's peremptory challenges were exhausted. Appellant contends that the court erred in accepting H.C. McMaster on the jury, thereby requiring appellant to get him off the jury by exercising one of his peremptory challenges. The relationship of a juror to a witness, either by affinity or consanguinity, regardless of how close the relationship may be, does not disqualify such juror. 16 Ruling Case Law, p. 259, § 77.
110 So. at 590. In Owens v. State, 177 Miss. 488, 171 So. 345 (1936), this Court rejected a similar challenge, stating:
On examination of two of the jurors it was shown that they were related to the two witnesses, Gates and Stephens, who had gone to the store the night of killing, and who saw the appellants there. Although related to the two witnesses, these jurors stated that they had not talked to the witnesses, and did not know what their testimony would be, and that they would treat such testimony as they would that of any other witness, and would feel no embarrassment in deciding the case on its merits. We do not think the relationship disqualified the jurors, and there is no merit in this contention.
171 So. at 349-350.
In the recent case of Mhoon v. State, 464 So.2d 77 (Miss. 1985), this Court declined to *1002 adopt a per se rule disqualifying a juror on the basis of his or her relationship to law enforcement personnel. The case sub judice may be distinguished from Mhoon in that: (a) as noted by the state, the record does not reflect that the challenged juror, James O. Stanley, actually served on the jury which ultimately tried the case. Carter v. State, 147 Miss. 171, 113 So. 177 (1927) and (b) the record does not reflect any statistical aberration in the jury pool as in the Mhoon case.
The cases relied upon by the appellant, Laney v. State, 421 So.2d 1216 (Miss. 1982) and King v. State, 421 So.2d 1009 (Miss. 1982), involved jurors who failed to accurately respond to questions regarding their relationships with law enforcement personnel on voir dire examination. In the case sub judice the challenged jurors did not conceal their relationships to Chief Parkes.
This assignment of error is without merit.

III.
The second assignment of error challenges the trial court's overruling appellant's motion to suppress appellant's statement.
Appellant argues that his confession, which was given only after he was confronted with the shoes found in the home where he was staying, should have been suppressed as the product of an illegal search. The state argues simply that the search was legal since conducted pursuant to the voluntary consent of appellant's mother. Brown v. State, 358 So.2d 1004 (Miss. 1978).
The question of the legality of the search in the case sub judice turns upon a factual inquiry of whether or not the officers in fact were given permission for the search. Officer Carter and Officer Calloway both testified at the suppression hearing that the appellant's mother gave permission for the search. Appellant's mother, on the other hand, testified that she did not give the officers permission to search her home. This Court has held that the resolution of conflicting testimony regarding voluntariness is a question of fact to be resolved by the trial judge at the suppression hearing. Clemmons v. State, 316 So.2d 252 (Miss. 1975). In Jackson v. State, 418 So.2d 827 (Miss. 1982), this Court stated:
With regard to the conflicting testimony, it is apparent that the trial court judge accepted the testimony of the two officers and rejected that of Jackson. Insofar as this involved an evaluation of credibility, this Court is not in a position to hold that the trial court judge erred in that regard. As the Court stated previously in Luton v. State, 287 So.2d 269 (Miss. 1974):
It was a classic question of fact to be decided by the judge himself who had the opportunity of seeing and observing each of the witnesses who testified. The trial judge gave to each bit of the testimony such weight and worth as he deemed proper under the existing circumstances. [287 So.2d at 272].
Thus, the Court accepts the lower court's finding of fact with regard to the issue of consent. We, therefore, conclude that the consent exception to the warrant requirement permits the admission of the evidence in question.
418 So.2d at 830.
This Court accepts the trial court's finding of fact with regard to this issue and this assignment of error is without merit.

IV.
Lastly, the appellant is aggrieved of the trial court sentencing him as a habitual offender to the maximum term without the possibility of probation or parole. This challenge addresses the ex post facto application of that statute.
Appellant Smith, who had pled guilty on May 7, 1975 to three charges of uttering forgery and pled guilty on November 2, 1976 to a charge of grand larceny, was indicted, tried and sentenced as a habitual *1003 offender under Miss. Code Ann. § 99-19-81 (1972). Appellant argues that inasmuch as his prior convictions occurred before January 1, 1977, the date section 99-19-81 became effective, the application of the sentencing enhancement statute constitutes an ex post facto law in violation of the U.S. Constitution, Article I, Section 10.
In Branning v. State, 224 So.2d 579 (Miss. 1969), this Court addressed an analogous contention with respect to the Uniform Narcotic Drug Act 1962. Defendant Branning was given an enhanced sentence under the Act and argued on appeal that since his prior convictions occurred before the passage of the Act, the application of the enhanced sentence provision constituted an ex post facto law. This Court rejected that argument and upheld the sentence, stating:
Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.
224 So.2d at 580-581 quoting Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948).
This assignment of error is without merit.
Finding no reversible error in Smith's conviction, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.