# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01670-COA

**ALLEN M. RUSSELL A/K/A RUSSELL ALLEN**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2019 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/11/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     A Forrest County jury found Allen Russell guilty of possession of marijuana in an amount greater than 30 grams but less than 250 grams. The Forrest County Circuit Court sentenced Russell as a violent habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015) to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for probation or parole. On appeal from the circuit court's judgment, Russell argues that his sentence constitutes cruel and unusual punishment and is grossly disproportionate to his felony conviction. Finding no error, we affirm.

**FACTS**

¶2.    While investigating a felony that occurred the morning of November 29, 2017, officers from the Hattiesburg Police Department developed Russell as a suspect in the crime. After arriving at Russell's apartment complex and confirming the apartment in which Russell lived, the officers evacuated the occupants of several surrounding apartments. The officers observed someone peering through the curtain of Russell's apartment, but no one responded to the officers' attempts to make contact. The officers used a bullhorn to explain their presence outside the apartment and to provide Russell with an opportunity to voluntarily exit his apartment. Despite their attempts, the officers' efforts to contact Russell proved unsuccessful.

¶3.    In the event that Russell had been unable to hear their previous attempts to contact him, the officers breached the windows of the apartment after obtaining a search warrant. They then attempted again, unsuccessfully, to contact Russell. The officers next deployed a flash bang by the apartment's front door, which also failed to elicit any response to their commands for any occupants to exit the apartment. The officers eventually entered the apartment through the front door. Although they did not immediately see Russell, the officers observed a closet that contained a stool positioned underneath an opening to the apartment's attic crawl space. The officers called to Russell and tried to persuade him to exit the attic. After Russell failed to respond, the officers threw a chemical agent into the attic crawl space. Russell finally exited the attic wearing only a white tank top and his underwear.

¶4.    After arresting Russell, the officers entered the apartment and observed a pair of blue

jeans through the hole leading to the attic crawl space. Inside the jeans, the officers found Russell's driver's license and Social Security card as well as five bags of a green leafy substance that appeared to be marijuana. An analysis performed on two of the five bags by the Mississippi Forensics Laboratory confirmed that the two bags tested contained marijuana with a combined weight of 43.710 grams.[1]

¶5. The jury convicted Russell of possession of marijuana in an amount greater than 30 grams but less than 250 grams. During the sentencing hearing, the State presented evidence of Russell's prior felony convictions. In April 2004, Russell pled guilty to two separate charges of burglary of a dwelling and received two concurrent fifteen-year sentences in MDOC's custody. The State presented evidence that Russell served eight years, seven months, and three days on each charge for burglary of a dwelling before being released from prison in February 2014. In October 2015, Russell then pled guilty to possession of a weapon by a convicted felon and received a ten-year sentence in MDOC's custody, with two years to serve, eight years suspended, and five years of post-release supervision. Based on the State's proof of Russell's two prior felony convictions, the circuit court found Russell to be a violent habitual offender and sentenced him to life imprisonment without eligibility for probation or parole. Russell unsuccessfully moved for a new trial or, alternatively, a judgment notwithstanding the verdict. Aggrieved, Russell appeals.

---

[1] Because 43.710 grams of marijuana satisfied the amount necessary to obtain the highest applicable statutory penalty for the amount of marijuana recovered, to save time and resources, the forensics laboratory did not test the remaining three bags.

**DISCUSSION**

¶6.    Russell contends that his enhanced sentence as a habitual offender constitutes cruel and unusual punishment and is grossly disproportionate to the crime committed.  As this Court recently acknowledged, "'in the context of our habitual statutes, as well as in sentencing other offenders,' the [Mississippi S]upreme [C]ourt 'has recognized the broad authority of the [L]egislature and trial courts in this area and has repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual.'" *McFarland v. State*, 297 So. 3d 1110, 1115-16 (¶18) (Miss. Ct. App. 2020) (citation omitted) (quoting *Stromas v. State*, 618 So. 2d 116, 123-24 (Miss. 1993)).  A narrow exception applies, however, when the sentence imposed is grossly "disproportionate to the crime charged." *Willis v. State*, 300 So. 3d 999, 1009 (¶29) (Miss. 2020) (quoting *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992)).

¶7.    "[T]o determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence." *Nash v. State*, 293 So. 3d 265, 269 (¶13) (Miss. 2020).  As the *Nash* court explained, "[o]nly in the exceedingly 'rare case in which this threshold comparison leads to an inference of gross disproportionality' should the court 'then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions.'" *Id.* (quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010)).

4

¶8. In *Wall v. State*, 718 So. 2d 1107, 1109 (¶¶1-2) (Miss. 1998)), the appellant was convicted of possession of a controlled substance and sentenced as a violent habitual offender under section 99-19-83. Upon review, the supreme court held that the appellant's sentence of life imprisonment without parole was not grossly disproportionate to the crime of possession of a controlled substance. *Id*. at 1114 (¶30). Similarly, in *Hudson v. State*, 31 So. 3d 1, 4 (¶12) (Miss. Ct. App. 2009) (reversed on other grounds by *Hudson v. State*, 30 So. 3d 1199, 1208 (¶26) (Miss. 2010)), this Court addressed an appellant's argument that his sentence of "life imprisonment for a trace amount of cocaine is unconstitutionally excessive under the Eighth Amendment." This Court held that "[a] 'sentence of life without parole is not grossly disproportionate to a habitual offender's crime of possession of a controlled substance.'" *Id*. at (¶14) (quoting *Wall*, 718 So. 2d at 1114 (¶30)). This Court explained that "[the appellant's] sentence of life without parole, which was mandatory under the circumstances, did not arise solely from his conviction of possession of cocaine. [The appellant] was sentenced to life without parole for his status as a habitual offender with a record as a violent offender." *Id*.[2] This Court therefore stated that "[t]he correct proportionality analysis for a habitual offender sentence does not consider the present offense alone, but within the habitual offender statute." *Id*. "This Court, sitting as an intermediate

_____

[2] Similarly, the trial court's imposition of the habitual-offender sentence in this case did not arise solely from Russell's conviction of possession of marijuana, but rather from his multiple prior offenses which qualified him for habitual-offender status pursuant to section 99-19-83.

appellate court, is obligated to follow precedent established by the Mississippi Supreme Court." *Kennedy v. State*, 766 So. 2d 64, 65 (¶3) (Miss. Ct. App. 2000). We must therefore follow the supreme court's guidance as set forth above in *Wall*.[3]

¶9.     Upon review of the case before us, and in accordance with precedent, we find that Russell's sentencing as a habitual offender was not grossly disproportionate as he claims and was clearly within the prescribed statutory limits.[4] *See Wall*, 718 So. 2d 1107 at 1114 (¶30). Russell's felony conviction for possession of marijuana in an amount greater than 30 grams but less than 250 grams fell under Mississippi Code Annotated section 41-29-139(c)(2)(B)(1)

---

[3] In *Solem v. Helm*, 466 U.S. 277, 281 (1983), a case similar to the one before us, the defendant was convicted of a felony that ordinarily carried a maximum sentence of five years' imprisonment. However, because of his prior criminal history, including three burglaries, the defendant was sentenced to serve life without parole. *Id*. at 282-83. Unlike the case before us, the United States Supreme Court recognized that the defendant's prior offenses "were all nonviolent, none was a crime against a person, and alcohol was a contributing factor in each case." *Id*. at 280. Upon review, the United States Supreme Court ultimately held that the defendant's sentence was "significantly disproportionate" to his crime and violated the Eighth Amendment. *Id*. at 303. In the present case, although burglary of a dwelling was not a per se crime of violence at the time of Russell's prior felony convictions, burglary of a dwelling was considered a per se crime of violence at the time of Russell's conviction for possession of a controlled substance and subsequent sentencing as a violent habitual offender.

[4] Contrary to the assertion in Judge Westbrooks's dissent, the majority is not affirming Russell's sentence solely because of the general rule that a sentence that does not exceed the maximum period allowed by statute should not be disturbed on appeal. Rather, we are also affirming Russell's sentence in accordance with Mississippi Supreme Court precedent. As discussed above, in *Wall*, 718 So. 2d at 1114 (¶30), the supreme court determined that an appellant's sentence as a violent habitual offender to life imprisonment without parole was not grossly disproportionate to the crime of possession of a controlled substance. We are "obligated to follow precedent established by the Mississippi Supreme Court." *Kennedy*, 766 So. 2d at 65 (¶3).

(Rev. 2018), which provides the punishment of "a fine of not more than Three Thousand Dollars ($3,000.00), or imprisonment in the custody of the Department of Corrections for not more than three (3) years, or both . . . ." During Russell's sentencing hearing, however, the State presented evidence that Russell was a violent habitual offender under section 99-19-83. According to section 99-19-83:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation[,] or any other form of early release from actual physical custody within the Department of Corrections.

¶10. Mississippi Code Annotated section 97-3-2 (Rev. 2014) identifies burglary of a dwelling as a crime of violence.[5] As this Court recently explained, "[p]rior to 2014, to designate burglary of a dwelling as a violent crime, the State had to prove actual violence during the commission of the burglary." *Moffite v. State*, 309 So. 3d 529, 539 (¶44) (Miss. Ct. App. 2019) (citing *Brown v. State*, 102 So. 3d 1087, 1092 (¶21) (Miss. 2012)). "In 2014, the Legislature defined burglary of a dwelling as a 'per se crime of violence.'" *Id*. (quoting

---

[5] Prior to the Legislature defining burglary of a dwelling as a "per se crime of violence," this Court explained that the crime of burglary of a dwelling "carries such a heavy potential penalty because of the high potential for injury or loss of life the nature of burglary necessarily includes." *Alston v. State*, 841 So. 2d 215, 217 (¶8) (Miss. Ct. App. 2003).

Miss. Code Ann. § 97-3-2 (Rev. 2014)). This Court has recognized that it is a fundamental right "not to be subjected to ex post facto laws." *Id*. (quoting *Salter v. State*, 184 So. 3d 944, 950 (¶22) (Miss. Ct. App. 2015)). However, "we have found no constitutional violation where an enhanced sentence was enforced based on felonies committed before the passing of a habitual-offender statute." *Id*. (citing *Miller v. State*, 225 So. 3d 12, 15 (¶12) (Miss. Ct. App. 2017)).

¶11. Thus, although burglary of a dwelling was not considered a per se crime of violence at the time of Russell's 2004 felony convictions, burglary of a dwelling was considered a per se crime of violence in accordance with section 97-3-2 at the time of Russell's 2019 conviction for possession of a controlled substance and subsequent sentencing as a habitual offender. We therefore find no error in the circuit court's enforcement of the enhanced sentence in the present case. As our precedent explains, Russell's sentencing as a habitual offender constituted "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Miller*, 225 So. 3d at 14-15 (¶12) (emphasis omitted) (quoting *Smith v. State*, 465 So. 2d 999, 1003 (Miss. 1985)). "In essence, the Legislature warned [Russell] and others with prior residential burglary convictions: 'If you commit another felony, you will be subject to a sentence of life without the possibility of parole.'" *Id.* at 16 (¶16).

¶12. Here, the State's evidence established that Russell had two prior separate felony convictions for burglary of a dwelling, for which he was sentenced to and served over one

year in MDOC's custody on each conviction. The State also presented evidence that Russell was later convicted of possession of a firearm by a felon and sentenced to ten years with eight years suspended and two years to serve, followed by five years of post-release supervision. Based on such evidence, the circuit court justifiably found Russell to be a violent habitual offender under section 99-19-83 and sentenced him to life imprisonment in MDOC's custody without eligibility for probation or parole. Because Russell has failed to prove the threshold requirement of gross disproportionality, and because his habitual-offender sentence fell within the statutory guidelines, we conclude that his sentence constituted "a constitutionally permissible punishment for his most recent crime . . . ." *Miller*, 225 So. 3d at 16 (¶17). We therefore find this issue lacks merit.

## CONCLUSION

¶13. Because we find no error in the circuit court's judgment, we affirm Russell's conviction and sentence.

¶14. **AFFIRMED.**

**BARNES, C.J., GREENLEE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**WILSON, P.J., DISSENTING:**

¶15. In *Solem v. Helm*, 466 U.S. 277 (1983), the United States Supreme Court held that a life without parole sentence for a recidivist criminal convicted of a relatively low-level felony

9

violated the Eighth Amendment. In terms of the gravity of his present offense and the extent and seriousness of his criminal history, I cannot draw any material distinction between Allen Russell and the defendant in *Solem*. Thus, I conclude that we are bound under *Solem* to vacate Russell's life without parole sentence. Accordingly, I respectfully dissent.

## I.     Allen Russell

¶16.   In 2004, Allen Russell pled guilty to two counts of burglary of a dwelling. The charging documents in those cases indicate that the two burglaries involved the same house and occurred just two days apart. The record discloses nothing else about the burglaries. Russell was sentenced to the Regimented Inmate Discipline (RID) Program, which he completed, followed by probation. However, he later violated the terms of his probation by failing to complete a program at a restitution center, and he ultimately served more than eight years for the burglaries. In 2015, Russell pled guilty to possession of a firearm by a felon and was sentenced to ten years with eight years suspended and two years to serve. This is the full extent of Russell's prior criminal history shown by the record in this case.

¶17.   In 2019, Russell was convicted of simple possession of more than 30 grams but less than 250 grams of marijuana. Miss. Code Ann. § 41-29-139(c)(2)(B)(1) (Rev. 2018). The evidence at trial showed that police found five bags of a green leafy substance that appeared to be marijuana inside a pair of Russell's blue jeans. The total weight of the bags was 79.5 grams, and an analysis of two of the five bags showed that they contained 43.71 grams of marijuana. The remaining bags were not analyzed because the charge only required proof

of more than 30 grams.

¶18.    Ordinarily, a conviction for simple possession of between 30 and 250 grams of marijuana is punishable "by a fine of not more than One Thousand Dollars ($1,000.00), or confinement in the county jail for not more than one (1) year, or both; or by a fine of not more than Three Thousand Dollars ($3,000.00), or imprisonment in the custody of the Department of Corrections for not more than three (3) years, or both." *Id.*  If the defendant is sentenced to a term of imprisonment in the custody of the Department of Corrections, he will be eligible for parole after he has served one-fourth of his sentence.  Miss. Code Ann. § 47-7-3(1) (Rev. 2015).  Simple possession of thirty grams or less of marijuana, in contrast, is a civil infraction punishable only by a fine of $100 to $250.  Miss. Code Ann. § 41-29-139(c)(2)(A)(1).[6]

¶19.    However, because Russell was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2020), he received a mandatory sentence of life imprisonment without eligibility "for parole, probation or any other form of early release from actual physical custody within the Department of Corrections." *Id.*  Russell was thirty-six years old at the time he was sentenced.

¶20.    Section 99-19-83 does not apply unless the defendant has previously committed at

---

[6] In addition, under a recent amendment to our Constitution, a person with a "medical marijuana identification card" will be able to legally buy 2.5 ounces (just over 70 grams) of marijuana every two weeks.  *See* Initiative Measure #65, § 8, *available at* www.sos.ms.gov/ Elections-Voting/Pages/Initiative-Measure-65.aspx (last visited May 11, 2021).

11

least one "crime of violence, as defined by [Mississippi Code Annotated] [s]ection 97-3-2 [(Rev. 2020)]." *Id.* Under section 97-3-2, which became effective on July 1, 2014, burglary of a dwelling is a "crime of violence." Miss. Code Ann. § 97-3-2(1)(o). Thus, under current law, Russell's prior burglary convictions are considered crimes of violence.[7] Prior to July 1, 2014, burglary of a dwelling was not a "per se 'crime of violence' under [s]ection 99-19-83." *Brown v. State*, 102 So. 3d 1087, 1092 (¶21) (Miss. 2012). Previously, burglary of a dwelling was a "crime of violence" only if there was "proof of an actual act of violence during the commission of the burglary." *Id.* As noted above, the record does not show the facts of Russell's prior burglaries, although the fact that he was sentenced to the RID Program and probation suggests that they did not involve acts of violence.

## II.    Jerry Helm

¶21.    Jerry Helm was a recidivist criminal in South Dakota in the 1960s and 1970s. *Solem*, 463 U.S. at 279-81. In 1964, 1966, and 1969, Helm was convicted of third-degree burglary. *Id.* at 279. Under South Dakota law, a third-degree burglary could be a burglary of either a dwelling or a non-dwelling depending on the facts of the case. *Id.* at 279 n.1. In 1972, Helm was convicted of obtaining money under false pretenses. *Id.* at 279-80. In 1973, he was convicted of grand larceny. *Id.* at 280. In 1975, he was convicted of third-offense DUI. *Id.*

---

[7] In *Miller v. State*, 225 So. 3d 12 (Miss. Ct. App. 2017), we held that the application of Section 97-3-2 to burglaries committed prior to July 1, 2014, did not violate the constitutional prohibition on ex post facto laws. *Id.* at 14-16 (¶¶7-17); *accord Chism v. State*, No. 2018-M-01436 (Miss. July 25, 2019). Russell does not argue otherwise on appeal.

Finally, in 1979, Helm was convicted of passing a forged check. *Id.* at 281 & n.5. Ordinarily, the maximum sentence for that crime would have been five years' imprisonment. *Id.* at 281. However, Helm was sentenced to life imprisonment without eligibility for parole under South Dakota's recidivist statute. *Id.* at 281-82. Like Russell, Helm was thirty-six years old at the time he was sentenced. *Id.* at 303 n.32. On these facts, the United States Supreme Court found that Helm's sentence of life without parole "for relatively minor criminal conduct" was "significantly disproportionate" and "therefore prohibited by the Eighth Amendment." *Id.* at 303.

### III.    Analysis

¶22.    In *Solem*, the Supreme Court held that the Eighth Amendment prohibits sentences that are "grossly disproportionate" or "significantly disproportionate" to the defendant's crime. *Id.* at 288, 303. The Court further held that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292.

¶23.    Subsequently, the controlling opinion in *Harmelin v. Michigan*, 501 U.S. 957 (1991), reaffirmed *Solem*'s holding that the Eighth Amendment includes "a narrow proportionality principle." *Id.* at 997 (Kennedy, J., concurring in part and concurring in the judgment); *see Nash v. State*, 293 So. 3d 265, 269 (¶13) (Miss. 2020) (recognizing Justice Kennedy's

13

opinion as the controlling opinion in *Harmelin*). *Harmelin*'s controlling opinion held that "strict proportionality between crime and sentence" is not required but that the Eighth Amendment "forbids . . . extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment). In addition, under *Harmelin*, *Solem*'s second and third factors—comparing sentences imposed for other crimes in the same jurisdiction and for the same crime in other jurisdictions—need not be examined in all cases. *Id.* at 1005. Rather, such comparisons "are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.*

¶24. Although *Solem* has been clarified or distinguished in subsequent cases, it has not been overruled. *Nash*, 293 So. 3d at 269 (¶13). Therefore, as "a decision of the United States Supreme Court," *Solem* is clearly "binding on the tribunals and citizens of the respective states in comparable cases." *Bolton v. City of Greenville*, 253 Miss. 656, 666, 178 So. 2d 667, 672 (1965). And while no two cases are exactly alike, the facts and the question presented in *Solem* are not materially distinguishable from the facts and the question presented in this case. That is, this is a "comparable case," and we are therefore bound to follow *Solem* and vacate Russell's life without parole sentence.

¶25. Given that *Solem* is not materially distinguishable, it should not be necessary to reinvent the wheel by engaging in an extended "proportionality" analysis. Jerry Helm was convicted of a felony that ordinarily carried a maximum sentence of five years'

imprisonment, but he was sentenced at age thirty-six to serve life without parole because of his prior criminal history, which consisted of six prior felonies, including three burglaries. *Solem*, 463 U.S. at 279-83. The United States Supreme Court held that Helm's sentence was "significantly disproportionate" and violated the Eighth Amendment. *Id.* at 303. Similarly, Russell was convicted of a felony that ordinarily carries a maximum sentence of three years' imprisonment, but he was sentenced at age thirty-six to serve life without parole because of his criminal history, which consisted of three prior felonies, including two burglaries. It is true that the Supreme Court stated that Helm's prior offenses, including three burglaries, "were all nonviolent," *id.* at 280, while Mississippi law now classifies burglary of a dwelling as a "crime of violence." However, like the record in this case, the record in *Solem* "contain[ed] no details about the circumstances of any of [Helm's prior] offenses," *id.*, and there is nothing to suggest that Helm's three burglaries were any less serious or violent than Russell's two.[8] Thus, this case is not materially distinguishable from *Solem* based on the gravity of Russell's present offense, the extent or seriousness of his prior criminal history,

---

[8] In a footnote, the majority suggests that *Solem* is distinguishable because the United States Supreme Court referred to Helm's burglaries as "nonviolent" crimes while Mississippi law now defines burglary of a dwelling as a crime of violence. *Ante* at n.3. But again, the Supreme Court in *Solem* admittedly knew nothing of Helm's prior burglaries, and we likewise know nothing of Russell's prior burglaries. Thus, in substance, and for purposes of constitutional analysis, this is a distinction without a difference. While the Legislature clearly has the power to define a crime as violent or nonviolent *for purposes of state law*, it is equally clear that the Legislature cannot change the meaning of the Eighth Amendment to the United States Constitution. *See City of Boerne v. Flores*, 521 U.S. 507, 519-20, 529 (1997) (holding that Congress lacks the power to alter the meaning of the Constitution).

the severity of the punishment he received, or any other material fact. Accordingly, the result must also be the same. *Bolton*, 253 Miss. at 666, 178 So. 2d at 672.

¶26.    In addition, the United States Supreme Court has emphasized the difference between a sentence of life imprisonment *with* eligibility for parole and a sentence of life imprisonment *without* eligibility for parole. In *Rummel v. Estelle*, 445 U.S. 263 (1980), while upholding a sentence of life with eligibility for parole (in as few as twelve years) in the case of a defendant who had been convicted of a third nonviolent felony, the Court stated that the defendant's eligibility for parole "serve[d] to distinguish [him] from a person sentenced under a recidivist statute like Mississippi's, which provides for a sentence of life without parole upon conviction of three felonies including at least one violent felony." *Id.* at 281 (citing Miss. Code Ann. § 99-19-83). In *Solem*, the Court again emphasized this distinction, stating that "[w]hereas Rummel was eligible for a reasonably early parole, Helm, at age 36, was sentenced to life with no possibility of parole." *Solem*, 463 U.S. at 303 n.32. Obviously, Russell's sentence under section 99-19-83 is the equivalent of the sentence that the Court struck down in *Solem*, not the sentence that the Court upheld in *Rummel*.

¶27.    The majority relies on a Mississippi Supreme Court decision, *Wall v. State*, 718 So. 2d 1107 (Miss. 1998), and the rule that this Court "is obligated to follow precedent established by the Mississippi Supreme Court." *Ante* at ¶8 (quoting *Kennedy v. State*, 766 So. 2d 64, 65 (¶3) (Miss. Ct. App. 2000)). I agree that we must follow Mississippi Supreme Court precedent, but we have to follow the United States Supreme Court's decisions too. We

16

are required to do *both*, and therefore we must do our best to reconcile decisions of those two courts that may appear to conflict. The defendant in *Wall*, who was convicted and sentenced as a violent habitual offender for one count of possession of marijuana and a second count of possession of diazepam, had a prior conviction for armed robbery and another for strong-arm robbery. *Wall*, 718 So. 2d at 1114 (¶30). Armed robbery is considered a more serious crime than Russell's most serious prior offense (burglary), as evidenced by the fact that armed robbery is punishable by a sentence of life imprisonment without eligibility for parole. Miss. Code Ann. § 97-3-79 (Rev. 2020); Miss. Code Ann. § 47-7-3(1)(c)(ii), (g)(i); *see also Williams v. State*, 590 So. 2d 1374, 1378 n.2 (Miss. 1991) (stating that "armed robbery *is* a capital offense in Mississippi"). Thus, *Wall* is distinguishable on the ground that the defendant's criminal history was more serious than Russell's.[9] That may seem like a narrow distinction to draw, but the majority does not identify *any* material distinction between *Solem* and this case. *See supra* n.8. I cannot distinguish *Solem* either. Therefore, I believe that we

---

[9] The majority opinion also cites an opinion of this Court that affirmed a sentence of life without parole for a defendant convicted of simple possession of cocaine as a violent habitual offender. *Hudson v. State*, 31 So. 3d 1, 4-5 (¶¶12-15) (Miss. Ct. App. 2009), *rev'd on other grounds*, 30 So. 3d 1199 (Miss. 2010). Our Supreme Court subsequently reversed and rendered Hudson's conviction and sentence and ordered him discharged because the evidence was insufficient to support the conviction. *Hudson*, 30 So. 3d at 1208 (¶26). Because the Supreme Court reversed and rendered Hudson's conviction, the Court did not "address the proportionality of his sentence." *Id.* at 1207 n.9. Regardless, Hudson had prior convictions for armed robbery, aggravated assault on a law enforcement officer, felony DUI, felony shoplifting, and possession of heroin. *Id.* at 1202 n.4. Moreover, the Legislature has always punished possession of cocaine more seriously than possession of marijuana, presumably reflecting a judgment that it is a more serious offense. Thus, to the extent that it has any precedential value, *Hudson* is also distinguishable.

are bound by *Solem* to vacate Russell's sentence.

**Conclusion**

¶28.    Two points about this case are important to keep in mind. First, its facts are relatively unique and are not typical of the vast majority cases in which section 99-19-83 is applied. Russell was convicted of a low-level felony that ordinarily carries a maximum sentence of three years' imprisonment. The evidence at trial indicated that he had somewhere between 43.71 and 79.5 grams of marijuana in his blue jeans. If his jeans had contained only 30 grams of marijuana, it would have been treated as a civil infraction punishable by only a small fine. I cannot say that Russell's possession of such an amount of marijuana was any more grave or serious an offense than the criminal fraud at issue in *Solem*. In addition, although Russell's prior burglaries qualify him for sentencing under the letter of section 99-19-83, there is nothing in the record to show that Russell's prior crimes involve any actual acts of violence or other aggravating circumstances. Therefore, I also cannot say that Russell's criminal history was any worse than that of the defendant in *Solem*.

¶29.    Second, the United States Supreme Court's decisions regarding the Eighth Amendment's "proportionality" principle are difficult to reconcile and hard to apply in a principled fashion. *See, e.g.*, *Solem*, 463 U.S. at 304-18 (Burger, C.J., dissenting); *Harmelin*, 501 U.S. at 985-90 (opinion of Scalia, J., joined by Rehnquist, C.J.). We do not have to agree with those decisions or attempt to extend them beyond their holdings. But when the United States Supreme Court has held that a particular sentence is unconstitutional in a case

18

that is not materially distinguishable from the case in front of us, we are obliged to apply the Supreme Court's decision and vacate the sentence. *Bolton*, 253 Miss. at 666, 178 So. 2d at 672. I think this is such a case. Accordingly, I respectfully dissent.

**WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., JOIN THIS OPINION.**

**WESTBROOKS, J., DISSENTING:**

¶30. I recognize the majority's position that as a general rule, a sentence that does not exceed the maximum period allowed by statute should not be disturbed on appeal. *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992). However, a sentence that is "grossly disproportionate" to the crime committed should be subject to review on Eighth Amendment grounds. *Id*. I respectfully dissent from the majority because in this instance Russell received a sentence that was grossly disproportionate to the non-violent crime of which he was convicted.

¶31. Furthermore, although I concur with Judge Wilson's dissent, I respectfully submit that courts are routinely called upon to pass judgment and impose sentences in cases involving "low-level" non-violent felony offenders. And, more often than not, if the offenders have prior convictions for which they can be charged as a habitual offender, they are ultimately deprived of their personal freedom largely based on a relatively minor legal infraction which, standing on its own, would call for a vastly reduced sentence. Although *Clowers v. State*, 522 So. 2d 762 (Miss. 1988), does not deal with the imposition of a life sentence, I believe it is instructive. In *Clowers*, the Supreme Court affirmed the sentence imposed by the trial

19

court when the judge found that the maximum sentence of fifteen years without parole under the habitual offender statute was disproportionate to Clowers's conviction of forging a check for $250.00. *Id*. at 763. This Court has stated time and again that *Clowers* is "not the rule, but the exception." *Oby v. State*, 827 So. 2d 731, 734 (¶9) (Miss. Ct. App. 2002) (quoting *Bell v. State*, 769 So. 2d 247, 252 (¶12) (Miss. Ct. App. 2000)). It is time for those vested with responsibility within the criminal justice system to adjust sentencing mandates to ensure that the punishment is proportional to the crime.

¶32. The purpose of the criminal justice system is to punish those who break the law, deter them from making similar mistakes, and give them the opportunity to become productive members of society. The fact that judges are not routinely given the ability to exercise discretion in sentencing all habitual offenders is completely at odds with this goal. Additionally, "[t]he discharge of judicial duties requires consideration, deliberation[,] and thoughtful use of the broad discretion given judges under the laws of this State." *White v. State*, 742 So. 2d 1126, 1137 (¶44) (Miss. 1999). In instances such as these, the duty of the judiciary, as an independent branch of government, is frustrated because courts are not allowed to take the facts and circumstances surrounding a habitual offender's prior offenses into account at sentencing. In cases like Russell's any discretion really lies with the prosecution rather than the judiciary. Once an offender is charged and convicted as a habitual offender, courts have no option but to "rubber stamp" the decision by sentencing an

offender under section 99-19-83 instead of section 99-19-81.[10] In fact, situations like the one currently before us are a prime example of why many people have called for criminal justice reform with regard to sentencing.

¶33.    For these reasons, I respectfully dissent.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**

---

[10] This may ultimately mean that section 99-19-83 should be amended similarly to section 99-19-81 in order to give the judiciary the discretion to sentence an offender to less than life imprisonment on a case-by-case basis.